Viola Alepuyo
Attorney-at-Law
2nd Floor, Lim's Bldg, Oleai
P.O. Box 5506 CHRB
Saipan, MP 96950
(670) 233-8535/8536/8537
(670) 233-8538 fax

Attorneys for Aniceto T. Ogumoro

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ANICETO T. OGUMORO, | CIVIL ACTION NO.  08-0010 |
| Plaintiff | |
| v. | |
| JUAN I. WABOL,   EDWARD   MANALILI, JAMES GUERRERO, CHRISTOPHER LEON GUERRERO,  and John Does 1-20, | **FIRST AMENDED COMPLAINT  & DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff, Aniceto T. Ogumoro (hereinafter "Mr. Ogumoro") hereby sets forth his Complaint against Defendants as follows:

## I.  Jurisdiction and Venue

1.    The Court has jurisdiction of this matter pursuant to the Covenant to Establish a Commonwealth of the Northern Mariana Islands In Political Union With the United States of America (Covenant) (authorizing Congress to establish this Court), 48 U.S.C. § 1821-22 (establishing this Court and granting it the jurisdiction of a district court of the United States), 28 U.S.C. § 1331 (federal question jurisdiction), and the Constitution and laws of the United States. The Court has supplemental jurisdiction over the various state claims pursuant to 28 U.S.C. § 1367. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## II. Parties

2.    Plaintiff, Aniceto T. Ogumoro ("Mr. Ogumoro"), is, and at all relevant times to this action, a resident of Saipan, CNMI, the Director of Police for the Commonwealth of the Northern Mariana Islands ("Commonwealth") Department of Public Safety ("DPS"), and is of Refaluwasch descent.[1]

3.    Defendant Juan I. Wabol ("Defendant Wabol"), on information and belief, was at all times relevant to this action, a resident of Saipan, CNMI, the Acting Commissioner of DPS acting within the scope and course of his employment and under the color of state law, and is of Refaluwasch descent.

4.    Defendant Edward Manalili ("Defendant Manalili"), on information and belief, was at all times relevant to this action, a resident of Saipan, CNMI, and the Commander of the DPS Criminal Investigation Bureau ("CIB") acting within the scope and course of his employment and under the color of state law, and is of Filipino descent.

5.    Defendant James Guerrero ("Defendant Guerrero"), on information and belief, was at all times relevant to this action, a resident of Saipan, CNMI, and the Supervisor of DPS CIB acting within the scope and course of his employment and under the color of state law, and is of Chamorro descent.

6.    Defendant Christopher Leon Guerrero ("Defendant "Leon Guerrero"), on information and belief, was at all times relevant to this action, a resident of Saipan, CNMI, and was an Investigator with the DPS CIB acting within the scope and course of his employment and under the color of state law, and is of Chamorro descent.

7.    Defendant John Does, upon information and belief, were at all times relevant to this action,

_____

[1] *In re the Estate of Amires*, 1997 MP 8 (recognizing "...the word "Refaluwasch" is a more accurate word than "Carolinian" to refer to persons of "Carolinian" descent in the Northern Mariana Islands.)

1     residents of the CNMI and employees of the Commonwealth and DPS acting within the scope and

2     course of their employment and under the color of state law.

3     ## III. Facts

4    8.    The Commonwealth ("CNMI") is the governmental entity established pursuant to the Covenant

5          to Establish a Commonwealth of the Northern Mariana Islands in Political union with the United

6          States of America ("Covenant").

7    9.    The capital of the CNMI is located on Saipan.

8    10.   The local indigenous population on Saipan are comprised of Chamorro and Refaluwasch descent.

9    11.   The Chamorro people of Saipan dominate the political, economic and social structure over the

10         Refaluwasch people of Saipan.

11   12.   DPS is an instrumentality of the CNMI and is the governmental entity operating as a police

12         department for the citizens of the CNMI, with its principal place of business on Saipan during all

13         relevant times of this action.

14   13.   At all relevant times herein, Defendants Wabol, Manalili, Guerrero, Leon Guerrero, and John

15         Does were employees of the CNMI and DPS.

16   14.   Defendant Wabol was with the DPS Fire Department prior to his appointment as Acting

17         Commissioner of DPS.

18   15.   At all relevant times herein, Defendant Wabol was the Acting Commissioner of DPS responsible

19         for supervising and training DPS personnel in the performance of their duties.

20   16.   At all relevant times herein, Defendant Wabol was responsible for administering and enforcing

21         Commonwealth laws and DPS regulations and procedures.

22   17.   At all relevant times herein, Defendant Manalili was employed as the DPS CIB Commander

23         responsible for supervising and training of CIB personnel in the performance of their duties.

24   18.   At all relevant times herein, Defendant Manalili was responsible for administering and enforcing

      Commonwealth laws and DPS and CIB regulations and procedures.

19.   At all relevant times herein, Defendant Guerrero was employed as the DPS CIB Supervisor responsible for the training and direct supervision of CIB investigators in the performance of their duties, including Defendant Leon Guerrero.

20.   At all relevant times herein, Defendant Guerrero was responsible for administering and enforcing Commonwealth laws and DPS and CIB regulations and procedures.

21.   At all relevant times herein, Defendant Leon Guerrero was employed as a DPS CIB Investigator responsible for investigating criminal activities in the CNMI, administering and enforcing Commonwealth laws and DPS regulations and procedures.

22.   At all relevant times herein, Defendant Leon Guerrero was responsible for administering and enforcing Commonwealth laws and DPS and CIB regulations and procedures.

23.   At all relevant times herein, Mr. Ogumoro was the DPS Director of Police, a senior police officer with over twenty (20) years of service.

24.   Over the years at DPS, Mr. Ogumoro has been the victim of racial slurs from other DPS employees because he is of Refaluwasch descent.

25.   Mr. Ogumoro was passed over for many years for promotion from Lieutenant to Captain because his is of Refaluwasch descent.

26.   At all relevant times herein, Mr. Ogumoro was one of the most senior DPS employees who was being considered for the position of DPS Commissioner.

27.   At all relevant times herein, Mr. Ogumoro's brother, Ambrosio T. Ogumoro ("Ambrosio"), was the DPS Range Master.

28.   At all relevant times herein, Ambrosio was married to Defendant Wabol's sister in law.

29.   At all relevant times herein, Ambrosio and Defendant Wabol were brothers in law through marriage.

30.   At all relevant times herein, Ambrosio was involved in extra marital affairs, causing a strain in his marriage.

31.   At all relevant times herein, Ambrosio and Defendant Wabol did not get along and would often times get into a screaming match, exchanging curse words, during family functions.

32.   Defendants Wabol, Manalili, Guerrero, Leon Guerrero and John Does agreed to formulate a scheme and did in fact effectuate a plant to arrest Ambrosio and ultimately, Mr. Ogumoro to remove any of Defendant Wabol's competition from the DPS Commissionership.

33.   On February 9, 2006, Defendant Leon Guerrero drafted an Affidavit of Probable Cause in Support of a Search and Arrest Warrant ("Affidavit") for Mr. Ogumoro's brother, Ambrosio T. Ogumoro ("Ambrosio"). A true and correct copy of the Affidavit is attached hereto as Exhibit A.

34.   Defendant Leon Guerrero alleged in the Affidavit that a confidential informant who was a family member of Ambrosio's wife provided information to him alleging that Ambrosio would threaten that if something were to happen to him, he would "...shoot the politicians and bring them down" and would even "...shoot the governor if he found it he was involved." *See* Affidavit p.3, ¶11.

35.   Mr. Ogumoro later found out the confidential informant family member was Defendant Wabol, the Acting DPS Commissioner.

36.   In support of the Affidavit, Defendant Leon Guerrero, alleged the following concerning Mr. Ogumoro:

    a.    a family member informed Defendant Leon Guerrero that in early 2000, Ambrosio had various weapons displayed on a table and Mr. Ogumoro was present. *See* Affidavit, p.2, ¶7

    b.    on January 2, 1998 CNMI Customs Officers seized a total of two thousand seven hundred and sixty three (2,763) high powered rifle ammunition. That as indicated in the "Customs Logbook" reference Customs Case Number CS 98-02 , Mr. Ogumoro was the intended recipient of the above ammunition coming from the United States mainland. *Id*. p.3 ¶9.

    c.    after an assessment of the Ogumoro family compound, a container was seen behind the residence of Mr. Ogumoro. *Id*. at ¶10

d.    Mr. Ogumoro and Ambrosio lived on the Ogumoro family compound in Capitol Hill. *Id.* at ¶ 12.

e.    Mr. Ogumoro is currently employed as a Captain and serving as the Acting Director of Police at the Department of Public Safety (DPS). *Id.* at ¶13;

37.    Pursuant to the information above, Defendant Leon Guerrero declared under penalty of perjury that based on his training, education and experience, there existed probable cause in support of the issuance of a search warrant for the residence of Mr. Ogumoro, including a cargo container and a bunker located behind Mr. Ogumoro's residence.

38.    On February 9, 2006, as a result of Defendant Leon Guerrero's Affidavit for Ambrosio, a Search Warrant was issued for the search of Mr. Ogumoro's home. A true and correct copy of the Search Warrant is attached as Exhibit B.

39.    The Search Warrant also included a search of the cargo container next to and a bunker behind Mr. Ogumoro's home. *See* Search Warrant.

40.    Pursuant to the above mentioned search warrant, officers from the Department of Public Safety's Criminal Investigation Division, Terrorism Intelligence & Prevention Section (TIPS), Tactical Response Enforcement Team, Commonwealth Ports Authority's Special Response Team (SRT) and the CNMI Customs Services searched Mr. Ogumoro's home with his wife and children present.

41.    Pursuant to the above mentioned search warrant, various weapons and ammunition was recovered from Mr. Ogumoro's master bedroom closet with the assistance from Mr. Ogumoro's wife.

42.    On February 11, 2006, Defendant Leon Guerrero executed an Affidavit of Probable Cause in Support of the Issuance of an Arrest Warrant "(Arrest Warrant") for Mr. Ogumoro. A true and correct copy of the Arrest Warrant is attached as Exhibit C.

43.    Defendant Leon Guerrero indicated "...that Aniceto upon seeing the firearms and ammunitions being taken out of [his] house had asked of this detective to obtain a copy of the firearms

1     inventory of his gums to be performed by the police." *See* Arrest Warrant p.2 ¶6.

2  44.  Defendant Leon Guerrero also stated he "...requested for verification and learned that Aniceto was

3     never issued a license to possess or carry any firearms or ammunitions in the Commonwealth of

4     the Northern Mariana Islands." *Id.* at ¶5.

5  45.  Defendant Leon Guerrero failed to indicate whether he conducted a search of DPS records to

6     ascertain whether Mr. Ogumoro was ever issued DPS firearms.

7  46.  Defendant Leon Guerrero alleged that based on his "...training, education and experience, that

8     Affiant believes that there exists probable cause for the arrest of Aniceto T. Ogumoro to support

9     the charges of Illegal Possession of a Firearm and Ammunitions in violation of Title 6, Subsection

10    2202; Illegal Carrying of a Firearms in violation of Title 6 Subsetion 2206 of the laws of the

11    Commonwealth Criminal Code." *Id.* p.2.

12 47.  Defendant Leon Guerrero also requested the court set Mr. Ogumoro's bail at $300,000.

13 48.  On February 11, 2006, a Warrant of Arrest was issued for Mr. Ogumoro. A true and correct copy

14    of the Warrant of Arrest is attached hereto as Exhibit D.

15 49.  On the evening of February 11, 2006, Mr. Ogumoro was arrested at his home in front of his wife

16    and children.

17 50.  At no time during his arrest did Mr. Ogumoro try to resist arrest or disrespect any of the officers

18    present.

19 51.  Mr. Ogumoro was brought to the Department of Corrections where he was strip searched,

20    processed and incarcerated.

21 52.  Defendant Leon Guerrero based his determination of probable cause from a 1998 information

22    without any follow up investigation for the search of Mr. Ogumoro's home.

23 53.  Defendant Leon Guerrero based his determination of probable cause on Mr. Ogumoro's familial

24    relations with Ambrosio for the search of Mr. Ogumoro's home.

   54.  Defendant Leon Guerrero based his determination of probable cause from a 1998 information

1    without any follow up investigation for the eventual arrest of Mr. Ogumoro.

2    55.  Defendant Leon Guerrero relied on information from as early as 1998 without any follow up

3    investigation for the eventual arrest of Mr. Ogumoro.

4    56.  Defendant Leon Guerrero based his determination of probable cause on Mr. Ogumoro's familial

5    relations with Ambrosio for the eventual arrest of Mr. Ogumoro.

6    57.  The charges against Mr. Ogumoro  were not based upon probable cause, that is the state of the

7    facts in the mind of the prosecutor would not lead a man of ordinary caution and prudence to

8    believe, or entertain an honest or strong suspicion that Mr. Ogumoro was guilty.

9    58.  Defendants Wabol, Manalili, Guerrero, Leon Guerrero and John Does had a duty to ascertain

10   whether there was reasonable and probable cause for a prosecution, to wit, knowing that Mr.

11   Ogumoro was a Captain and Director of Police at DPS and therefore had supervisory duties, a

12   complete check  of the Armory records would have revealed the serial numbers of the firearms

13   and ammunition signed out to Mr. Ogumoro were the same firearms seized during the search of

14   Mr. Ogumoro's home.

15   59.  On Monday, February 13, 2006, Mr. Ogumoro was brought to the CNMI Superior Court and

16   paraded in front of his wife and children as well as numerous family members, friends,

17   community members and the media in handcuffs, shackled in custody and wearing an orange

18   jumpsuit.

19   60.  During the February 13, 2006 bail hearing, the court required Mr. Ogumoro's property, posted

20   in lieu of cash bail, be appraised to ensure it was worth equal to or more than his bail.

21   61.  As such, Mr. Ogumoro was remanded back to the Department of Corrections.

22   62.  On February 14, 2006, upon meeting all of the court's pretrial release conditions, Mr. Ogumoro

23   was released from the Department of Corrections.

24   63.  On February 17, 2006, an Information was filed against Mr. Ogumoro charging him with 2 counts

1    of Unlawful Possession of a Firearm, in violation of 6 CMC §222(e); Possession of Weapon

2    without Proper Registration, in violation of 6 CMC §2225(a); and Unlawful Possession of

3    Ammunition, in violation of 6 CMC §2222(e). A true and correct copy is attached hereto as

4    Exhibit E.

5    64.    Mr. Ogumoro provided to the prosecution and DPS an Affidavit by DPS Officer David Anthony

6           M. Hosono. A true and correct copy of the Hosono Affidavit is attached hereto as Exhibit F.

7    65.    On or about March 15, 2006, David Anthony M. Hosono ("Hosono"), DPS Officer II, previously

8           assigned to the CNMI Armory, executed an Affidavit stating:

9           a.    that Ambrosio Ogumoro, his former supervisor, requested he look for a document issued

10                when Mr. Ogumoro was issued firearms as a part of his duties at DPS.

11          b.    that he found the requested document.

12          c.    that he was concerned about speaking with Ambrosio.

13          d.    that his concern for speaking to Ambrosio was based on Defendant Wabol calling him to

14                inform him Ambrosio was released from the Department of Corrections and orders from

15                the CNMI Governor was to stay away from Ambrosio and Mr. Ogumoro because they

16                were under surveillance.

17   66.    The document Hosono produced was a January 22, 2004 and February 12, 2005 DPS Issuance

18          of Firearms/AMMO Acknowledgment Receipts listing the ammunition and firearms and serial

19          numbers of the firearms issued to Mr. Ogumoro in his role as the DPS Boating Safety

20          Commander. A true and correct copy of the January 22, 2004 and February 12, 2005 DPS

21          Issuance of Firearms/AMMO Acknowledgment Receipt is attached hereto as Exhibit G and H

22          respectively.

23   67.    The weapons and ammunition listed in the DPS Issuance of Firearms/AMMO Acknowledgment

24          Receipt are the same weapons and ammunition found in Mr. Ogumoro's home.

68. Mr. Ogumoro filed a Motion to Suppress all evidence found during the search of his home pursuant to Com. R. Civ. Pro. 12(b)(3), N. Mar. I. Const. Art. I, §3, the Fourth Amendment to the United States Constitution and the holding in *Franks v. Delaware*, 438 U.S. 154 (1978).

69. During the suppression hearing, Mr. Ogumoro requested the court to issue a bench warrant for Defendant Wabol for failing to appear pursuant to a Summons to testify at the hearings.

70. A chamber's conference was called after the bench warrant request.

71. During the chambers conference, the Commonwealth attorney objected to the arrest of Defendant Wabol and alleged the Commonwealth had a confidential informant that the court could not compel to testify at the hearing.

72. Mr. Ogumoro clarified the request for the bench warrant was for Defendant Wabol's failure to appear pursuant to a Summons, not an arrest of a confidential informant.

73. The Commonwealth again insisted that the arrest of Defendant Wabol and ultimate testimony during the hearing would, in effect, force a confidential informant to testify before his identity was revealed. The court informed the parties a bench warrant would issue if and when Defendant Wabol was still not in court when his name was called as a witness.

74. Mr. Ogumoro confirmed the confidential informant family member providing information in Defendant Leon Guerrero's Affidavit was none other than Defendant Wabol.

75. During the suppression hearing, Mr. Ogumoro tendered and the court qualified Claudio K. Norita as an expert on DPS procedures.

76. Mr. Norita also provided an Affidavit in addition to his testimony as an expert regarding the procedure, or the lack thereof, Defendant Leon Guerrero utilized to determine if probable cause existed for the search of Mr. Ogumoro's home and eventual arrest. A true and correct copy of Mr. Norita's Affidavit is attached hereto as Exhibit I.

//

77.    Mr. Norita provided the following information:

    a.    With respect to paragraph number 7, the year 2000 was when the "family member" (hereinafter informant) actually saw the firearms. To further corroborate the informant's information, the affiant should have done the following in order to determine whether probable cause still existed, more than six (6) years later:

        i.    The affiant should have asked the informant whether other family members were present and their identities;

        ii.    The affiant should have interviewed these other family members, if any, to corroborate the information received;

        iii.    Whether DPS had in their inventory and stock the firearms listed;

        iv.    Whether DPS issued any of these firearms to Ambrosio;

        v.    Whether Ambrosio had these firearms signed out;

        vi.    The informant should have been sent back to Ambrosio's residence to verify and physically see if these firearms were still in Ambrosio's possession;

        vii.    To engage Ambrosio in conversation as to the locations of these firearms;

        viii.    The affiant should have provided firearm samples in the form of pictures to determine the type of firearm seen in 2000;

    b.    With respect to paragraph numbers 9 and 10, the CNMI Customs Case Number CS98-02 allegedly occurred in 1998. The affiant should have done the following to corroborate the information received:

        i.    The affiant mentioned a "Customs Logbook" but did not provide any information concerning a file containing information about the bill of lading containing the container number, inventory of the container, shipper and recipient, etc.

        ii.    The affiant should have verified with the Attorney General's Office as the status

1    of the Customs Case, the recommendation of the prosecutor and the lack of

2    prosecution thereof;

3        iii.    The container number found in the bill of lading would have verified if the

4    container in the 1998 incident was the same container found behind Mr.

5    Ogumoro's residence or any of the containers found in the Ogumoro compound;

6        c.    With respect to paragraphs 12 and 13, this is merely supporting information identifying

7    Mr. Ogumoro's residence and his employment, but more importantly, it does not link him

8    with any crime.

9        d.    With respect to paragraph number 13, the affiant should have verified with the DPS

10    Armory if Mr. Ogumoro had any department issued firearms and also to verify with

11    records if he had any registered firearms.

12    78.    On April 17, 2006, the Superior Court issued an order suppressing all evidence found during the

13    search of Mr. Ogumoro's home. A true and correct copy of the Order Granting Defendant Aniceto

14    T. Ogumoro's Motion to Suppress Evidence is attached hereto as Exhibit J.

15    79.    The court based the decision to suppress evidence on the "...facts brought to light at the hearing,

16    and in consideration of the facts as they are presented within the four corners of the affidavit,

17    affiant [Defendant Leon Guerrero] failed to exercise due diligence in his investigation and

18    carelessly omitted material facts that would have altered the magistrate's finding of probable

19    cause. Specifically, affiant's careless investigation resulted in the omission of material facts...of

20    the affidavit, reliance on stale evidence, and failure to establish the family member's credibility

21    or reliability. Had the issuing magistrate disregarded the stale evidence and questioned the

22    reliability of the informant, nothing in the affidavit would support a finding of probable cause."

23    80.    The Government filed a notice of appeal in the CNMI Supreme Court but subsequently filed a

24    motion and was granted an order dismissing the appeal. A true and correct copy of the Order of

1        Dismissal is attached hereto as Exhibit K.

2    81.    The Government then filed a motion to dismiss in the Superior Court stating that they were "...not

3        convinced that sufficient evidence exists to prove the charges ...beyond a reasonable doubt." A

4        true and correct copy of the Motion to Dismiss with Prejudice is attached hereto as Exhibit L.

5    82.    The court granted the Government's motion, dismissing with prejudice the criminal case against

6        Mr. Ogumoro. A true and correct copy of the Order to Dismiss with Prejudice is attached hereto

7        as Exhibit M.

8    83.    Mr. Ogumoro's home was searched, his body was strip searched and he was incarcerated in order

9        to ensure Defendant Wabol did not have any competition for the position of DPS Commissioner.

10   84.    At all relevant times herein, Defendant Wabol ordered armed DPS officers to park outside his

11       residence and stand guard to protect him and his family.

12   85.    Defendant Wabol provided misleading information to Defendant Leon Guerrero in order to justify

13       the search of Mr. Ogumoro's home and his eventual arrest.

14   86.    Defendant Manalili, as the DPS CIB Commander had knowledge of Defendant Wabol's role as

15       the "family member" who was providing Defendant Leon Guerrero misleading information.

16   87.    Defendant Guerrero, as the DPS CIB Supervisor directly in charge of supervising Defendant Leon

17       Guerrero had knowledge of Defendant Wabol's role as the "family member" who was providing

18       Defendant Leon Guerrero misleading information.

19   88.    Defendant Leon Guerrero, as the DPS CIB Investigator knew Defendant Wabol was the Acting

20       DPS Commissioner and accepted as true misleading information.

21   89.    Defendant Wabol abused his authority as Acting DPS Commissioner by failing to ensure proper

22       DPS investigative procedures were followed in order to corroborate stale evidence.

23   90.    Defendant Manalili abused his authority as DPS CIB Commander by failing to ensure proper DPS

24       investigative procedures were followed in order to corroborate stale evidence.

91.   Defendant Guerrero abused his authority as DPS CIB Supervisor by failing to ensure proper DPS investigative procedures were followed in order to corroborate stale evidence.

92.   Defendant Leon Guerrero abused his authority as DPS CIB Investigator by failing to follow DPS procedure to corroborate stale evidence.

93.   Defendants John Does abused their authority as DPS employees by failing to ensure proper DPS investigative procedures were followed in order to corroborate stale evidence.

94.   Defendants Wabol, Manalili, Guerrero, Leon Guerrero and John Does conspired between and amongst themselves to directly and indirectly use their positions with DPS to remove Mr. Ogumoro from DPS in order to eliminate Defendant Wabol's competition for the DPS Commissionership.

95.   Mr. Ogumoro was singled out for removal from DPS because of his seniority with the department and because of his Refaluwasch lineage.

## IV.  Causes of Action

### COUNT 1:
Violations of 42 U.S.C. §1983 (Arrest)

96.   Plaintiff repeats, realleges and incorporates by reference the allegations in paragraphs 1 through 95 above with the same force and effect as if herein set forth.

97.   At all times relevant herein, the conduct of all Defendants were subject to 42 U.S.C. §§ 1983, 1985, 1986 and 1989.

98.   Acting under the color of law, Defendants worked a denial of Mr.Ogumoro's rights, privileges or immunities as secured by the United States Constitution or by Federal law, to wit:

a.      by depriving Mr. Ogumoro of his liberty without due process of law, by failing to conduct follow up investigation in order to corroborate stale evidence and ensuring the credibility and reliability of the family member.

b.      by making an unreasonable search and seizure of his property without due process of law.

c.    by conspiring for the purpose of impeding and hindering the due course of justice, with intent to deny Mr. Ogumoro equal protection of laws.

d.    by refusing or neglecting to prevent such deprivations and denials to Mr. Ogumoro, thereby depriving him of his rights, privileges and immunities as guaranteed by Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

99.    As a result of their concerted unlawful and malicious arrest by Defendant Leon Guerrero and several unnamed and undetermined Defendants, Mr. Ogumoro was deprived of both his liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. §1983.

## COUNT 2:
## VIOLATIONS OF 42 U.S.C. §1983: DETENTION AND CONFINEMENT

100.    Mr. Ogumoro repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 99 above with the same force and effect as if herein set forth.

101.    At all times relevant herein, Defendants Wabol, Manalili, Guerrero, Leon Guerrero and John Does, in their official capacities, were and are acting under color of state law in exercising their authorities and powers.

102.    Defendants Wabol, Manalili, Guerrero, Leon Guerrero and John Does, as a result of their concerted efforts, caused Mr. Ogumoro to be unlawfully and maliciously detained and confined.

103.    Defendants Wabol, Manalili, Guerrero, Leon Guerrero and John Does deprived Mr. Ogumoro of both his rights and liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. §1983.

//
//

**COUNT 3**
VIOLATIONS OF U.S.C. 1983: STRIP SEARCH

104.   Mr. Ogumoro repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 103 above with the same force and effect as if herein set forth.

105.   At all times relevant herein, Defendants Wabol, Manalili, Guerrero,  Leon Guerrero and John Does, in their official capacities, were and are acting under color of state law in exercising their authorities and powers.

106.   Defendants Wabol, Manalili, Guerrero,  Leon Guerrero and John Does, as a result of their concerted  unlawful and malicious arrest, detention, and confinement of Mr. Ogumoro, caused Mr. Ogumoro to be subjected in the Department of Corrections to a strip search of his body, in a situation where there was no reason to believe that weapons and contraband had been concealed on or in his body, and thus deprived Mr. Ogumoro of both his rights and liberty without due process of law and his right to equal protections of the laws, and the due course of justice was impeded, in violations of the Fourth, Fifth,  and Fourteenth Amendments of the Constitutions of the United States and 42 U.S.C. §1983.

**COUNT 4**
VIOLATION OF 42 U.S.C. §1983: CONSPIRACY

107.   Mr. Ogumoro repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 106 above with the same force and effect as if herein set forth.

108.   At all times relevant herein, Defendants Wabol, Manalili, Guerrero,  Leon Guerrero and John Does, in their official capacities, were and are acting under color of state law in exercising their authorities and powers.

109.   Defendants Wabol, Manalili, Guerrero, Leon Guerrero and John Does agreed and took action in furtherance of their agreement to not conduct further investigation as required by DPS procedures.

110.   Defendants Wabol, Manalili, Guerrero,  Leon Guerrero and John Does, as a result of their

concerted unlawful and malicious conspiracy, caused Mr. Ogumoro to be deprived of both his liberty without due process of law and his right to equal protection of the laws, and the due course of justice was impeded, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. §§ 1983 and 1985.

**COUNT 5**
VIOLATIONS OF 42 U.S.C. §1983: REFUSING OR NEGLECTING TO PREVENT

111.  Mr. Ogumoro repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 110 above with the same force and effect as if herein set forth.

112.  At all times relevant to this Complaint, Defendants Leon Guerrero and John Does, as police officers of DPS, were acting under the direction and control of Defendants Wabol, Manalili, Guerrero and John Does.

113.  Acting under color of law and pursuant to official policy or custom, Defendants Wabol, Manalili, Guerrero and John Does knowingly, recklessly, or with gross negligence failed to instruct, supervise, control, and discipline on a continuing basis Defendant Leon Guerrero and John Does in their duties to refrain from:

a.  unlawfully and maliciously harassing a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities;

b.  unlawfully and maliciously arresting, imprisoning and prosecuting a citizen who was acting in accordance with his constitutional and statutory rights, privileges, and immunities;

c.  conspiring to violate the rights, privileges, and immunities guaranteed to Mr. Ogumoro by the Constitution and laws of the United States and the laws of the Commonwealth of the Northern Mariana Islands; and

d.  otherwise depriving Mr. Ogumoro of his constitutional and statutory rights, privileges, and immunities.

114.    Defendants Wabol, Manalili, Guerrero and John Does had knowledge or, had they diligently exercised their duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed.

115.    Defendants Wabol, Manalili, Guerrero and John Does had the power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with gross negligence failed or refused to do so.

116.    Defendants Wabol, Manalili, Guerrero and John Does directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendant Leon Guerrero and John Does heretofore described.

117.    As a direct and proximate cause of the negligent and intentional acts of Defendants Wabol, Manalili, Guerrero and John Does as set forth in above mentioned paragraphs, Mr. Ogumoro suffered physical injury, loss of income, and severe mental anguish in connection with the deprivation of his constitutional and statutory rights guaranteed by the Fifth and Fourteenth Amendments of the Constitution of the United States and protected by 42 U.S.C. §1983.

**COUNT 6**
MALICIOUS PROSECUTION

118.    Mr. Ogumoro repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 117 above with the same force and effect as if herein set forth.

119.    Defendants instituted criminal process against the plaintiff with malice:

    a.      Defendants Wabol, Manalili, Guerrero, Leon Guerrero, and John Does played an active part in the initiation of the criminal proceedings.

    b.      Defendant Leon Guerrero played an active part in the initiation of the criminal proceedings against Mr. Ogumoro by failing to conduct follow up investigation on information provided to him from 1998 and 2000 and ensuring the credibility and

1          reliability of the family member.

2   120.   The charges against Mr. Ogumoro were not based upon probable cause.

3   121.   Defendants Wabol, Manalili, Guerrero, Leon Guerrero and John Does had a duty to ascertain

4          whether there was reasonable and probable cause for a prosecution against Mr. Ogumoro.

5   122.   Defendants Wabol, Manalili, Guerrero Leon Guerrero and John Does breached their duty.

6   123.   The criminal proceeding terminated in favor of the Mr. Ogumoro when the assistant Attorney

7          General filed, and the court granted dismissal of all charges against Mr. Ogumoro.

8   124.   Defendants Wabol, Manalili, Guerrero and John Does are liable under the doctrine of *respondeat*

9          *superior*.

10                              **COUNT 7**
                        MALICIOUS ABUSE OF PROCESS
11
12  125.   Mr. Ogumoro repeats and realleges and incorporates by reference the allegations in paragraphs

13         1 through 124 above with the same force and effect as if herein set forth.

14  126.   At all times relevant herein, Defendants Wabol, Manalili, Guerrero,  Leon Guerrero and John

15         Does, in their official capacities, were and are acting under color of state law in exercising their

16         authorities and powers.

17  127.   Defendants Wabol, Manalili, Guerrero,  Leon Guerrero and John Does, as a result of their

18         concerted efforts,  maliciously used a legal process to accomplish  some ulterior purpose for

19         which it was not designed or intended, or which was not the legitimate purpose of the particular

20         process employed.

21  128.   Defendants Wabol, Manalili, Guerrero, Leon Guerrero and John Does knew or should have

22         known Mr. Ogumoro, pursuant to his supervisory role, was issued firearms and ammunition in

23         his role as Boating Safety Commander.

24  129.   Defendants Wabol, Manalili, Guerrero and John Does failed to properly supervise Defendant

           Leon Guerrero to verify at the DPS Armory whether in fact Mr. Ogumoro was ever issued

1    firearms and ammunition.

2    130.    Defendants Wabol, Manalili, Guerrero and John Does knew or should have known the Affidavit

3    and Information was groundless and they sought to use the process for an ulterior purpose,

4    including, but not limited to, the purpose of removing Mr. Ogumoro from DPS because of his

5    Refaluwasch descent and to eliminate Defendant Wabol's competition for the position of DPS

6    Commissioner.

7    131.    Defendants Wabol, Manalili, Guerrero and John Does are liable under the doctrine of *respondeat*

8    *superior*.

9    **COUNT 8**
     VIOLATION OF CIVIL RIGHTS UNDER CNMI CONSTITUTION

10

11   132.    Mr. Ogumoro repeats and realleges and incorporates by reference the allegations in paragraphs

     1 through 131 above with the same force and effect as if herein set forth.
12

13   133.    At all times relevant herein, the conduct of all Defendants were subject to the Civil Rights under

     the CNMI Constitution.
14

15   134.    Defendants Wabol, Manalili, Guerrero, Leon Guerrero and John Does interfered with or

16   attempted to interfere by threats, intimidation, or coercion with Mr. Ogumoro's exercise and

17   enjoyment of his rights -- e.g., his rights to his liberty, his right to individual privacy, and his right

18   to due process -- secured by the state and federal constitutions or laws of the United States and/or

19   the CNMI.

20   135.    Thus, under color of state, Mr. Ogumoro's rights guaranteed by the Constitution of the CNMI,

21   including but not limited to his rights under Art. I,§3 to be free from unreasonable search and

22   seizures; §4 free from excessive bail; § 5 free from deprivation of due process of law, §6 equal

23   protection of law; and §10 his right to individual privacy.

24   136.    As a direct and proximate result of the conduct of the Defendants, Mr. Ogumoro was intimidated

     and put in continuing anxiety and has suffered damages including but not limited to the aforesaid

damages.

## COUNT 9
## FALSE ARREST AND IMPRISONMENT

137.  Mr. Ogumoro repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 136 above with the same force and effect as if herein set forth.

138.  At all times relevant herein, (a) the Defendants acted with the intention of confining Mr. Ogumoro within fixed boundaries, (b) the act directly or indirectly resulted in confinement, and (c) Mr. Ogumoro was conscious of the confinement.

139.  Defendants Wabol, Manalili, Guerrero, Leon Guerrero, and John Does, under the color of state law, imposed by force or threats an unlawful restraint upon Mr. Ogumoro's freedom of movement, to wit by arresting and handcuffing his hands behind his back, transporting him to the Department of Corrections where he was detained in a cell.

140.  Then, under the color of state law, Defendants Wabol, Manalili, Guerrero, Leon Guerrero, and John Does caused the unlawful imprisonment and consequential strip-search of Mr. Ogumoro in the Department of Corrections.

141.  As a direct and proximate result of the conduct of the Defendants, Mr. Ogumoro suffered harm and damages including but not limited to the aforesaid damages.

142.  Defendants Wabol, Manalili, Guerrero, Leon Guerrero and John Does are liable under the doctrine of *respondeat superior*.

## COUNT 10
## CONSPIRACY

143.  Mr. Ogumoro repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 142 above with the same force and effect as if herein set forth.

144.  All the Defendants (a) had an object to be accomplished; (b) had an agreement on the object or course of action; (c) performed one or more unlawful overt acts; and (d) caused Mr. Ogumoro

1    damages that were a direct result of those acts.

2    145.    In furtherance of their object, defendants did two or more overt acts against the plaintiffs. Those

3    unlawful overt acts include, but are not limited to, the following:

4    a.    Defendants Wabol, Manalili, Guerrero, Leon Guerrero, and John Does strategized and

5    devised a plan on how to search and ultimately arrest Mr. Ogumoro based on lack of

6    probable cause and drummed up charges against Mr. Ogumoro.

7    b.    Mr. Leon Guerrero relied on information provided to him based on actions from 1998 and

8    2000 as justification for probable cause to search Mr. Ogumoro's home and ultimately to

9    his arrest.

10    c.    Defendants Wabol, Manalili, Guerrero, Seman and John Does knew or should have

11    known that Defendant Leon Guerrero had intentionally used information over six (6)

12    years old and failed to conduct follow up investigation as necessary to establish probable

13    cause for the charges against Mr. Ogumoro.

14    146.    The Defendants agreed that the object or course of action was to arrest, detain, and confine Mr.

15    Ogumoro without probable cause, and maliciously charge and prosecute him with crimes.

16    147.    Defendants Wabol, Manalili, Guerrero and John Does are liable under the doctrine of *respondeat*

17    *superior*.

18    148.    Mr. Ogumoro suffered harm and damages that are a direct result of those acts.

19    **COUNT 12**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

20
21    149.    Mr. Ogumoro repeats and realleges and incorporates by reference the allegations in paragraphs

1 through 148 above with the same force and effect as if herein set forth.
22
23    150.    Defendants intentionally and deliberately inflicted emotional distress on Mr. Ogumoro by

maliciously prosecuting Mr. Ogumoro, or by abusing the lawful process by unlawful purpose, or
24
by violating Mr. Ogumoro's constitutional rights, or by falsely arresting and imprisoning Mr.

1    Ogumoro, by conspiring against Mr. Ogumoro, or by interfering with Mr. Ogumoro's state civil

2    rights by threats, coercion, or intimidation, or knew or should have known that emotional distress

3    was the likely result of their conduct.

4  151.  The acts of Defendants were willful, maliciously outrageous, extreme, beyond all possible bounds

5    of decency and utterly intolerable in a civilized community, and deliberate and purposefully with

6    the intention to inflict emotional distress upon Mr. Ogumoro.

7  152.  The actions of the Defendants were the cause of Mr. Ogumoro's distress.

8  153.  Mr. Ogumoro is a reasonable man.

9  154.  The emotional distress sustained by Mr. Ogumoro was severe and of a nature that no reasonable

10    man could be expected to endure.

11  155.  As a result of the Defendants' extreme and outrageous conduct, Mr. Ogumoro was, is, and, with

12    a high degree of likelihood, will continue to be emotionally distressed due to the intentional

13    exclusion.

14  156.  Defendants Wabol, Manalili, Guerrero, Leon Guerrero and John Does are liable under the

15    doctrine of *respondeat superior*.

16  157.  As a result of the Defendants' extreme and outrageous conduct, Mr. Ogumoro has suffered and

17    will continue to suffer mental pain and anguish, severe emotional trauma, embarrassment, and

18    humiliation.

19                              **COUNT 13**
                    NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

20
21  158.  Mr. Ogumoro repeats and realleges and incorporates by reference the allegations in paragraphs

21    1 through 157 above with the same force and effect as if herein set forth.

22
23  159.  Defendants continually negligently inflicted emotional distress on Mr. Ogumoro.

23
24  160.  Defendants had a continuing affirmative duty to perform their professional services in such a

24    manner as not to inflict emotional distress on Mr. Ogumoro.

1    161.    Defendants breached their duties to Mr. Ogumoro.

2    162.    Mr. Ogumoro never interfered with the Defendants' obligations under the above-described duties.

3    163.    Mr. Ogumoro suffered mentally as a consequence of the abovementioned Defendants' breach of

4             their duty.

5    164.    Mr. Ogumoro was, is, and, with a high degree of likelihood, will continue to be inflicted with

6             emotional distress due to the negligence of Defendants Wabol, Manalili, Guerrero, Leon Guerrero

7             and John Does.

8    165.    Defendants Wabol, Manalili, Guerrero, Leon Guerrero and John Does are also liable under the

9             doctrine of *respondeat superior.*

10   166.    As a result of the Defendants Wabol, Manalili, Guerrero, Leon Guerrero and John Does' negligent

11            conduct, Mr. Ogumoro has suffered and will continue to suffer pain, anguish, severe emotional

12            trauma, embarrassment, and humiliation.

13                                           **V.**
                                    **PRAYER FOR RELIEF**
14
             WHEREFORE, Mr. Ogumoro prays for relief as follows:
15
             a.     For general, consequential, statutory, special and compensatory damages and costs.
16
             b.     For punitive damages in an amount to be proven at trial.
17
             c.     For prejudgment interest as allowed by law.
18
             d.     For attorneys fees and costs of suit.
19
             e.     For such other and further relief as the Court may deem appropriate.
20
                                          **VI.**
21                                   **JURY DEMAND**

22           Mr. Ogumoro demands a jury trial on each claim for relief.

23   Respectfully submitted this 6th day of June, 2008.

24

1

/s/
Viola Alepuyo

Attorney for Plaintiff Aniceto T. Ogumoro

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

IN THE SUPERIOR COURT
FOR THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| Commonwealth of the Northern | ) | COURT CASE NO._____ |
| Mariana Islands | ) | DPS CASE NO. 2006-001181 |
| | ) | |
| Plaintiff, | ) | AFFIDAVIT OF PROBABLE |
| | ) | CAUSE IN SUPPORT OF THE |
| Vs. | ) | ISSUANCE OF SEARCH AND |
| | ) | ARREST WARRANTS |
| Ambrosio T. Ogumoro | ) | |
| Also Known As (A.K.A.) Ambrose | ) | |
| d.o.b. 5/21, 1958 | ) | |
| Defendant. | ) | |

**Affiant, <u>Detective Christopher Leon Guerrero</u>, deposes, and says:**

Affiant has been a Police Officer for the Commonwealth of the Northern Mariana Islands (CNMI) Department of Public Safety (DPS) for the past eight (8) years, and is currently assigned to the DPS Criminal Investigation Bureau (CIB) - Special Victims Investigation Section. Affiant is currently a member of the CNMI Family Violence Task Force (FVTF) and is assigned to investigate any and all criminal violations with special attention to domestic violence incident response and investigations. Before being assigned to the Criminal Investigation Bureau – Special Victims Investigation Section, Affiant was assigned to the Department of Public Safety's Patrol Section as a uniformed services officer to deter, detect and apprehend criminal violators. Affiant has participated in numerous criminal investigation activities, and has arrested numerous defendants for the same. Affiant has received and completed law enforcement training from the 14th Cycle Police Academy, CNMI Attorney General - Criminal Division and the Federal Bureau of Investigation (FBI).

**THIS AFFIDAVIT IS SUPPORTED BY THE FOLLOWING FACTS AND CIRCUSTANCES:**

1. On February 3rd, 2006 at approximately 7:16 p.m., a detective (hereinafter referred to as "this detective") contacted the Department of Public Safety and reported a domestic violence incident which occurred in Capitol Hill.

2. On February 3rd, 2006 this detective met with a victim and conducted an interview. This detective learned that sometime in October 2005 the suspect **Ambrosio T. Ogomoro hereinafter referred to as Ambrose** assaulted this victim. At the time Ambrose and this victim were arguing when Ambrose got mad and slapped the victim's right facial area whereby this victim sustained bruises.

1

Exhibit A

003

This victim further encountered pain to her right ear from the slap. Ambrose and two (2) of the victim's children were present at the time when the incident occurred. Ambrose at the time pulled this victim's hair and a chunk of it came off. The victim's son got in between and tried to stop Ambrose but, Ambrose struggled, got loose and slapped the victim's face again. Both children were screaming at the time and pleading with Ambrose to stop hitting this victim.

3.  That the two (2) children (hereinafter referred to as this male and this female) managed to assist this victim and they ran out from the house. Ambrose then started running out from the house shouting when this male ran in front of Ambrose and blocked him. The male, the female and this victim left the house and they rented a hotel for the night. This incident was not reported to the Department of Public Safety. There were prior incidents that were also not reported to the police. These incidents include times when Ambrose would physically abuse the victim by punching, slapping, pushing and pulling the victim's hair.

4.  The victim expresses fear because the victim is afraid of Ambrose. The victim knows of what Ambrose is capable of. That sometime after the last beating Ambrose confronted the victim because Ambrose at the time thought that the victim had reported him to the police. That Ambrose made threatening remarks that he (Ambrose) was "ready for whoever officers who were to approach" him and that he would "shoot them" because Ambrose had a gun.

5.  That on Monday, February 6th, 2006 at approximately 9:30 p.m., affiant conducted an investigation and arrived at a residence where affiant recovered a riffle. **That this rifle is a camouflage colored "U.S. M1A Springfield Armory" rifle with one (1) 20 round magazine and 16 rounds of high powered ammunitions.** Ambrose hand this rifle and it was stored at his residence in Capitol Hill.

6.  That affiant through his investigations further learned that this type of rifle was personally seen by a family member (hereinafter referred to as this family member). This family member saw this type of rifle being used by Ambrose. That affiant learned that this type of rifle was seen equipped with a scope. Affiant further verified and confirmed through the above mentioned brand name (SPRINGFIELD ARMORY) and that it's equipped with other accessories such as scopes.

7.  That affiant further learned that this family member sometime in the early 2000, he witnessed Ambrose displaying "a lot" of guns on a long table. That these guns that the family member saw included (about 6) Uzis, (about 3 12 gauge) shotgun, (several) M-16 Machineguns. There were also "a lot of handguns" such as revolvers and pistols that the family member saw after Ambrose had displayed it including "a lot of ammunitions". That Ambrose brother Aniceto T. Ogomoro was present at the time when these firearms were displayed.

004

8. These firearms were used for target practices at a farm area and some of it were given away to close friends of Ambrose and that the last time one of the handguns was given to another family member was fired off last Christmas in 2005. That these illegal firearms were possibly smuggled in when Ambrose was returning home from the United States mainland. At some point in time one of his cargo container from the mainland United States had boxes of illegal high power rifles and ammunitions and was seen by this family member.

9. That further investigation by the affiant revealed that on January 2nd, 1998 CNMI Customs Officers seized a total of two thousand seven hundred and sixty three (2,763) high powered rifle ammunitions. That as indicated in the "Customs Logbook" reference Customs Case Number CS98-02 that Aniceto T. Ogumoro was the intended recipient of the above ammunitions coming from United States mainland.

10. That an assessment was conducted of the Ogumoro family compound whereby a container was seen to be located behind the residence of Mr. Aniceto T. Ogumoro in Capitol Hill amongst other discoveries.

11. That affiant learned that Ambrose made threatening remarks that he would "blow up DPS" and that he "will shoot the politicians and bring them down" should something happen to him. Ambrose also made a comment that he would "shoot the governor if he found out that he was involved".

12. That further investigation into this matter had pointed to being that both Ambrose and his brother Aniceto T. Ogumoro reside at the Ogumoro family property compound in Capitol Hill.

13. That Mr. Aniceto T. Ogumoro is currently employed by the Department of Public Safety as a Police Captain and is serving as the Acting Director of Police.

14. That further investigative activities revealed that Ambrose is currently employed as a Weapons Specialist for the Department of Public Safety and whose also being assigned as the department's official armorer while at the same time serving as the person in charge of the Armory Unit and the Firearms and Criminal Records Section of the DPS.

THEREFORE, based on the information contained in paragraphs one (1) through fourteen (14) along with the Affiant's training, education and experience, the Affiant believes that there exists probable cause for the arrest of Ambrosio T. Ogumoro and requests for this Court to issue Search Warrants for all known residences, vessels and vehicles belonging to Mr. Ambrosio T. Ogumoro. A Search Warrant is also requested for the residence of Mr. Aniceto T. Ogumoro including a cargo container located behind his residence.

3

005

As such, there may be firearms (guns), and ammunitions concealed at the residences of Ambrosio T. Ogumoro or areas where he may have access to and the residence of Mr. Aniceto T. Ogumoro. There is high probability that these items were stored in a single storey concrete house and a tin house located next to it, a separate two-storey house in Capitol Hill, a 40-foot cargo container within a farm area, all of which are known to be frequently visited by Mr. Ambrosio T. Ogumoro.

Furthermore, Mr. Ambrosio T. Ogumoro is also known to have a girlfriend residing on the island (whom is employed as a Police Officer) of Tinian where he was known to frequently visit and which residential structure is described as a beige colored semi-concrete house located in the Carolinas Heights in Tinian that he also helped built. Furthermore, a white colored twenty-one foot (21') foot boat is known by the Affiant.

Additionally, further investigation revealed that the above described vessel is being used as his mode of transportation to and from Tinian to visit or sleep over his girlfriend's house. A two-storey concrete house (residence) belonging to Aniceto T. Ogumoro and a container next to it along with a bunker behind his house within the Ogumoro family compound located in Capitol Hill and whose (Aniceto's) residence is located northeast of Ambrose's house.

Affiant also believes that based on the information contained in paragraphs one (1) through six (6) that probable cause exists to support the charges of **Assault and Battery in violation of Title 6, Subsection 1202 (a); Illegal Possession of a Firearm in violation of Title 6, Subsection 2202; Illegal Possession of Ammunitions Title Six Subsection 2202** of the laws of the Commonwealth Criminal Code. The Affiant also requests that this court issue a warrant for the arrest of (1) **Ambrosio Tagabual Ogomoro a.k.a. Ambrose** and that bail be set at $5,000,000.00 given the special dangerous circumstances that exists.

Affiant **DECLARES UNDER THE PENALTY OF PERJURY** that the foregoing is true and correct to the best of his knowledge, and that this declaration was executed this **9**th day of **February 2006** on the island of **Saipan, Commonwealth of the Northern Mariana Islands.**

Signature of Affiant:

FEB 09-2006

Date:

**CHRISTOPHER LEON GUERRERO**
Affiant & Police Detective

4

006

*Reviewed by:*

**JEFFREY WARFIELD**
Chief, Criminal Division, Office of the Attorney General

2/9/06

Date:

2/9/06

**JUDGE OF THE SUPERIOR COURT**

5

U·    007

IN THE SUPERIOR COURT
SAIPAN
NORTHERN MARIANA ISLANDS

CLERK OF COURT
SUPERIOR COURT
FILED

2006 FEB 10  PM 2: 10

BY:
DEPUTY CLERK OF COURT

SEARCH        )
WARRANT       )
_____)

COURT NO. _____
DPS CASE NO. 2006-001181

The Commonwealth of the Northern Mariana Islands to any officer, agent, constable, marshal or peace officer in the Commonwealth:

Proof by (X) affidavit ( ) oral statement under oath, having been made before me by Detective Christopher Leon Guerrero, I find that there exists probable cause and therefore issue a search warrant for:

1) A fully concrete two-storey house (residence) in Capitol Hill located northeast of the residence of Ambrosio T. Ogumoro. The residence belongs to Mr. Aniceto T. Ogumoro. This Search Warrant is to include a cargo container next to his (Aniceto's) house and a bunker behind his (Aniceto's) residence and can be reached by passing by the intersection of Ambrosio's residence by making a right turn around the compound to the dead end by the cliff as shown on the attached map hereby incorporated by reference. It is possible that firearms may be concealed therein certain property, namely; ~~One (1)~~ The following property, which is,: (check category)    *CLG KLM*

    (x) (a)  Property the possession of which is prohibited by law; or

    ( ) (b)  Property stolen or taken under false pretense or embezzled or found and fraudulently appropriated; or

    ( ) (c)  Forged instruments in writing, or counterfeit coin intended to be passed, or instruments or materials prepared for making them; or

    (x) (d)  Firearms or ammunitions prepared for the purpose of concealment and or illegally distributed; or

    (x)(e)  Property necessary to be produced as evidence or otherwise on the trial of anyone accused of a criminal offense; or

    (x) (f)  Property designated or intended for the use as, the means of committing a criminal offense

**THEREFORE, YOU ARE COMMANDED** to search the premises, person and container described during the [ ] daytime/ [ ] nighttime/ [x] daytime or nighttime, for the above-mentioned property for identification purposes.

12

008

Exhibit B

**INVENTORY**

If you find the described property there, you are commanded to seize and prepare a written inventory of the property seized pursuant to this warrant and provide the inventory to this court on or before the date of _March 9, 2006_ .

      ISSUED this _9th_ day of February 2006, at _4:42_ am/pm in the Village of _Oxope_ on the island of Saipan, Commonwealth of the Northern Mariana Islands.

_____

**JUDGE OF THE SUPERIOR COURT**

13

009

CLERK OF COURT
SUPERIOR COURT
FILED

# IN THE SUPERIOR COURT
## FOR THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS 13 AM 8: 45

| | | |
|---|---|---|
| Commonwealth of the Northern Mariana Islands | ) ) ) | COURT CASE NO. BY: _____ DPS CASE NO. 2006-001405 CLERK OF COURT |
| Plaintiff, | ) ) | AFFIDAVIT OF PROBABLE CAUSE IN SUPPORT OF THE |
| Vs. | ) ) | ISSUANCE OF AN ARREST WARRANTS |
| Aniceto T. Ogumoro | ) ) | |
| Defendant. | ) ) | |

## Affiant, <u>Detective Christopher Leon Guerrero</u>, deposes, and says:

Affiant has been a Police Officer for the Commonwealth of the Northern Mariana Islands (CNMI) Department of Public Safety (DPS) for the past eight (8) years, and is currently assigned to the DPS Criminal Investigation Bureau (CIB) - Special Victims Investigation Section. Affiant is currently a member of the CNMI Family Violence Task Force (FVTF) and is assigned to investigate any and all criminal violations with special attention to domestic violence incident response and investigations. Before being assigned to the Criminal Investigation Bureau – Special Victims Investigation Section, Affiant was assigned to the Department of Public Safety's Patrol Section as a uniformed services officer to deter, detect and apprehend criminal violators. Affiant has participated in numerous criminal investigation activities, and has arrested numerous defendants for the same. Affiant has received and completed law enforcement training from the 14th Cycle Police Academy, CNMI Attorney General - Criminal Division and the Federal Bureau of Investigation (FBI).

## THIS AFFIDAVIT IS SUPPORTED BY THE FOLLOWING FACTS AND CIRCUSTANCES:

1. That on Friday February 10th, 2006 at approximately 12:23 p.m., affiant contacted the Department of Public Safety and reported an Illegal Possession of Firearms and Ammunitions, and Illegal Carrying of Firearms. These incidents occurred in Capitol Hill at the residence of Aniceto T. Ogumoro.

2. That on Thursday February 9th, 2006 Superior Court Associate Judge Ramona V. Manglona hereinafter referred to as this judge issued a Search Warrant for the premises belonging to **Aniceto T. Ogomoro hereinafter referred to as Aniceto..**

1

Exhibit C

The premises is described as the residence of Aniceto and is a two storey concrete structure which is the only structure by the far eastern part of the Ogumoro compound as shown on the map attached.

3. That law enforcement officers from the Department of Public Safety's Criminal Investigation Division, Terrorism Intelligence & Prevention Section (TIPS), Tactical Response Enforcement Team and the Commonwealth Ports Authority's Special Response Team (SRT) and the CNMI Customs Services were tasked and activated to execute several search warrants which included Aniceto's residence in Capitol Hill.

4. Upon serving the search warrant, this detective was directed by Aniceto's wife to the master bedroom of Aniceto located at the second floor of the structure where the firearms were discovered as having been stored inside Aniceto's bedroom closet. The first weapon is described as a **Remington Rifle, Model 700 264 WIN MAG with a Weaver scope and serial number 224703.** The second rifle that was recovered is a **Ruger Mini 14 caliber .223 with serial number 185-42726.** The third rifle that was recovered is a **black colored Colt AR 15 rifle with serial number 700225).** A field test was performed on the Colt AR15 assault rifle and it was presumed to being a full automatic machine gun. This detective further recovered **25 boxes of (containing 5 rounds each) of Winchester super buckshot 12 gauge rounds.**

5. That affiant requested for verification and learned that Aniceto was never issued a license to possess or carry any firearms or ammunitions in the Commonwealth of the Northern Mariana Islands (CNMI).

6. That affiant has learned from this detective assigned to conduct the search at Aniceto's residence that Aniceto upon seeing the firearms and ammunitions being taken out of Aniceto's house had asked of this detective to obtain a copy of the firearms inventory of his guns to be performed by the police.

**THEREFORE,** based on the information contained in paragraphs one (1) through six (6) along with the Affiant's training, education and experience, that Affiant believes that there exists probable cause for the arrest of **Aniceto T. Ogumoro** to support the charges of **Illegal Possession of a Firearm and Ammunitions in violation of Title 6, Subsection 2202; Illegal Carrying of a Firearms** in violation of **Title Six Subsection 2206** of the laws of the Commonwealth Criminal Code. The Affiant also requests that this court issue a warrant for the arrest of (1) **Aniceto Tagabual Ogomoro** and that bail be set at $300,000.00 given the special dangerous circumstances that exists.

Affiant **SWEARS AND SUBSCRIBE UNDER THE PENALTY OF PERJURY** that the foregoing is true and correct to the best of his knowledge, and that this affidavit was executed this **11th** day of **February 2006** on the island of **Saipan, Commonwealth of the Northern Mariana Islands.**

*Signature of Affiant:*

_____

**CHRISTOPHER LEON GUERRERO**
Affiant & Police Detective

02/11/2006
_____
Date:

*Reviewed by:*

_____

**JEFFREY WARFIELD**
Chief, Criminal Division, Office of the Attorney General

2/11/06
_____
Date:

_____

**JUDGE OF THE SUPERIOR COURT**

3

CLERK OF COURT
SUPERIOR COURT
FILED

**IN THE SUPERIOR COURT**
**FOR THE**
**COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS** 8: 45

| | |
|---|---|
| Commonwealth of the Northern<br>Mariana Islands )<br>)<br>)<br>Plaintiff, )<br>)<br>Vs. )<br>)<br>Aniceto T. Ogumoro )<br>)<br>)<br>Defendant. ) | COURT CASE NO. _____<br>DPS CASE NO. 2006-001405<br><br>**WARRANT**<br>**OF**<br>**ARREST** |

**TO ANY POLICE OFFICER, DETECTIVE, MARSHALL OR ANY PEACE OFFICER IN THE COMMONWEALTH,** approved ( ) Oral (X) Written affidavit provided before me by Detective Christopher Leon Guerrero on this date, here issued is an Arrest Warrant for the arrest of the above mentioned defendant for the charges of **Illegal Possession of a Firearm and Ammunitions in violation of Title Six Subsection 2202; Illegal Carrying of a Firearm in violation of Title Six Subsection 2206;** of the laws of the Commonwealth as listed in the Commonwealth Criminal Code.

**YOU ARE HEREBY COMMANDED** to arrest the above named defendant and to bring him before a judge without unnecessary delay.

[✓]    Confiscate Travel Documents.

[✓]    Cash bail of $_____ 300,000.00 _____ USD.

**ISSUED ON THIS** __11th__ day of February 2006 at _6:00_ a.m. (p.m) in the village of _Fina Sisu_ , Saipan, Commonwealth of the Northern Mariana Islands.

**BY THE COURT:**

_____
**JUDGE OF THE SUPERIOR COURT**

RETURN OF OFFICER: I hereby certify that I have issued this arrest warrant the on the above named defendant at _2123 hrs._ a.m. / p.m., on the __11th__ day of February 2006 at _CAPITOL HILL_ . Dated this __11__ day of February 2006.

_Sgt. A.I. Marananap_
Police Officer

4

CLERK OF COURT
SUPERIOR COURT
FILED

IN THE SUPERIOR COURT
FOR THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

2006 FEB 13 AM 8: 45

BY:
DEPUTY CLERK OF COURT

| | |
|---|---|
| Commonwealth of the Northern Mariana Islands )<br>)<br>)<br>Plaintiff, )<br>)<br>Vs. )<br>)<br>Aniceto T. Ogumoro )<br>)<br>)<br>Defendant. ) | COURT CASE NO.<br>DPS CASE NO: 2006-001405<br><br>WARRANT<br>OF<br>ARREST |

**TO ANY POLICE OFFICER, DETECTIVE, MARSHALL OR ANY PEACE OFFICER IN THE COMMONWEALTH,** approved ( ) Oral (X) Written affidavit provided before me by Detective Christopher Leon Guerrero on this date, here issued is an Arrest Warrant for the arrest of the above mentioned defendant for the charges of **Illegal Possession of a Firearm and Ammunitions in violation of Title Six Subsection 2202; Illegal Carrying of a Firearm in violation of Title Six Subsection 2206;** of the laws of the Commonwealth as listed in the Commonwealth Criminal Code.

**YOU ARE HEREBY COMMANDED** to arrest the above named defendant and to bring him before a judge without unnecessary delay.

[✓]   Confiscate Travel Documents.

[✓]   Cash bail of $ _____300,000.00_____ USD.

**ISSUED ON THIS** __11th__ day of February 2006 at __6:00__ a.m. (p.m) in the village of __Fina Sisu__, Saipan, Commonwealth of the Northern Mariana Islands.

BY THE COURT:

_____
JUDGE OF THE SUPERIOR COURT

RETURN OF OFFICER: I hereby certify that I have issued this arrest warrant the on the above named defendant at 2123 hrs. a.m. / p.m., on the __11__ day of February 2006 at __CIP/WC-MTU__. Dated this ____ day of February 2006.

_____
Sgt. A.I. Macaranas
Police Officer

4

**014**

Exhibit D

J. Camacho

CLERK OF COURT
SUPERIOR COURT
FILED

2006 FEB 17 PM 1: 10

BY:_____ gl
DEPUTY CLERK OF COURT

1  JEFFREY L. WARFIELD, SR., Chief Prosecutor
2  OFFICE OF THE ATTORNEY GENERAL, Criminal Division
3  Commonwealth Of The No. Mariana Islands
4  Susupe, Saipan, MP 96950
5  Telephone (670) 664-2367\2368\2365
6  Fax (670) 234-7016
7  Attorneys For Plaintiff
8
9                          IN THE SUPERIOR COURT
10                              FOR THE
11        COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
12
13  COMMONWEALTH OF THE          )   CRIMINAL CASE NO. 06-0038
14  NORTHERN MARIANA ISLANDS,    )   DPS No. 06-01405
15                  Plaintiff,   )
16                               )
17        vs.                    )   **INFORMATION**
18                               )
19  ANICETO OGUMORO,             )
20  d.o.b. 09/22/61    Defendant. )
21                               )
22

23  **COUNT I:  UNLAWFUL POSSESSION OF A FIREARM**

24        On or about February 10, 2006, on Saipan, Commonwealth of the Northern Mariana

25  Islands, the defendant, **ANICETO OGUMORO**, unlawfully possess an automatic weapon, to

26  wit: a Remington Rifle, Model 700264 Win Mag with Weaver Scope, with serial #224703, in

27  violation of 6 CMC § 2222 (e), and made punishable by 6 CMC § 2230 (b).

28

29  **COUNT II:  UNLAWFUL POSSESSION OF A FIREARM**

30        On or about February 10, 2006, on Saipan, Commonwealth of the Northern Mariana

31  Islands, the defendant, **ANICETO OGUMORO**, unlawfully possess an automatic weapon, to

32  wit: a Colt AR 15 Rifle, with serial # 700225, in violation of 6 CMC § 2222 (e), and made

33  punishable by 6 CMC § 2230 (b).

34                                    **Camacho & Alepuyo**
                                      **Attorneys-At-Law**
35                                    Received By: Annet
                                      Date: 2/16/06
                                      Time: 1:24

1

Exhibit E

**COUNT III:  POSSESSION OF A WEAPON WITHOUT PROPER REGISTRATION**

On or about February 10, 2006, on Sapan, Commonwealth of the Northern Mariana Islands, the defendant, **ANICETO OGUMORO**, failed to furnish a form approved by the Department of Public Safety to the agency or officer authorized to receive information concerning the transfer of firearm or dangerous devices pursuant to this article, equivalent information concerning any firearm or dangerous devise in his possession, to wit: Ruger Mini 14 Caliber .223, with serial #18542726, in violation of 6 CMC § 2225 (a), and made punishable by 6 CMC § 2230 (b).

**COUNT IV:  UNLAWFUL POSSESSION OF AMMUNITION**

On or about February 10, 2006, on Saipan, Commonwealth of the Northern Mariana Islands, the defendant, **ANICETO OGUMORO**, did unlawfully possess ammunition, to wit: 25 boxes of Winchester Super Buckshot 12 gauge rounds, in violation of 6 CMC § 2222 (e), and made punishable by 6 CMC § 2230 (b).

Dated this 17th day of February 2006.

RESPECTFULLY SUBMITTED,

OFFICE OF THE ATTORNEY GENERAL
MATTHEW T. GREGORY
ACTING ATTORNEY GENERAL

By: _____
JEFFREY L. WARFIELD, SR.
Chief Prosecutor
Attorneys for Plaintiff
Bar No. T-0030

1    **Viola Alepuyo, CNMI Bar No. F0316**
     Camacho & Alepuyo
2    2ⁿᵈ Floor, Lim's Bldg, Oleai
     P.O. Box 5506 CHRB
3    Saipan, MP 96950
     Tel.: (670) 233-8535/6/7
4    Fax: (670) 233-8538

5    *Attorneys for Defendant*

6
                        IN THE SUPERIOR COURT
7                              OF THE
             COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
8

9    COMMONWEALTH OF THE NORTHERN        )    CRIMINAL CASE NOS. 06-0038
10      MARIANA ISLANDS,                 )
                                         )
11              Plaintiff,               )
                                         )
12          vs.                          )    **AFFIDAVIT OF DAVID ANTHONY M.**
                                         )    **HOSONO**
13   **ANICETO T. OGUMORO,**             )
                                         )
14              Defendant.               )
                                         )
15   _____     )

16       I, **DAVID ANTHONY M. HOSONO**, swear and declare as follows:

17   1.    I am over 18 years old and I am competent to testify to these facts;

18   2.    I was born on Saipan and have lived here all my life;

19   3.    I have been employed at the Department of Public Safety (DPS) for over ten (10) years;

20   4.    I am currently a Police Officer II;

21   5.    For the past year, I have been assigned to the Firearms and Records/Range and Armory Section;

22   6.    My immediate supervisor prior to February 9, 2006 was Ambrosio T. Ogumoro, CNMI Range Master;

23   7.    I and Ambrosio T. Ogumoro were the only sworn officers from DPS assigned to the DPS Armory and

24        Range Section;

                                    1

                          Exhibit F

1  8.   A few days after Ambrosio T. Ogumoro was released from the custody of the Department of
2       Correction (DOC), he visited me at my residence;
3  9.   Ambrosio T. Ogumoro requested my assistance in finding a document pertaining to a firearm that was
4       issued to Aniceto T. Ogumoro;
5  10.  I asked Ambrosio T. Ogumoro where in the DPS Armory Office this document may be located and he
6       informed me to just look within the office, the files and filing cabinet;
7  11.  The following day when I went to work, I went to the DPS Armory Office and tried to locate the
8       requested documents;
9  12.  It took a while for me to find the documents, but I eventually found two documents with the following
10      information:
11        a.   Commonwealth of the Northern Mariana Islands Department of Public Safety Issuance of
12             Firearms/AMMO Acknowledgment Receipt form where Ambrosio T. Ogumoro, Range
13             Master, issued to Aniceto T. Ogumoro, CIB Commander, on January 22, 2004 a Colt AR 15
14             M16A1 Service Rifle #700225(1); a Remington Rifle #224703(1) Bolt Action; 5.56MM
15             Rounds (100); and 7.62 MM Rounds (20).
16        b.   Commonwealth of the Northern Mariana Islands Department of Public Safety Issuance of
17             Firearms/AMMO Acknowledgment Receipt form where Ambrosio T. Ogumoro, Range
18             Master, issued to Aniceto T. Ogumoro for Boating Safety Unit Operation on February 12,
19             2005 a 12 Gauge Mossberg 590 #P931709, #P931527 and 12 Guage Buckshot 140
20             Rounds/28 Boxes.
21  13.  There is only one (1) filing cabinet in the DPS Armory Office, it is a five drawer, grey colored filing
22       cabinet;
23  14.  I found the first document in a folder entitled "Training Lesson";
24  15.  I found the second document in another folder;

2

16.  I made copies of the documents I found;

17.  I placed both original documents in the folder entitled "Training Lesson";

18.  I then placed the folder back into the filing cabinet;

19.  A few days later, Ambrosio T. Ogumoro called my residence and asked about the requested documents;

20.  I informed him that I had the documents in my possession;

21.  Ambrosio T. Ogumoro came to my residence and picked up the requested documents;

22.  I was concerned when Ambrosio T. Ogumoro came to my residence the first time to speak to me because of a phone call I received from then Acting Commissioner of DPS John Wabol concerning the following;

   a.  Wabol called me the day Ambrosio T. Ogumoro was released from DOC at the Koban Station in Garapan on the cell phone;

   b.  The cell phone was previously issued to Ambrosio T. Ogumoro and was later confiscated from him when he was arrested;

   c.  Officer Jesse Seman issued the cell phone to me pursuant to Commissioner Wabol's instructions;

   d.  Commissioner Wabol asked me if I knew that Ambrosio T. Ogumoro was released from DOC and I told him that I did not know;

   e.  Commissioner Wabol then informed me that Ambrosio T. Ogumoro was in fact released from DOC that very day;

   f.  Commissioner Wabol then said, "This is coming from the Governor, that you should not have any contact with Ambrosio, Aniceto and Hillary (Hillary Tagabuel). Watch it because there

//

//

3

1    a surveillance going on concerning these guys."

2    Dated this 15th day of March, 2006 on Saipan, Commonwealth of the Northern Mariana Islands.

3

4                                                          _____

5                                                          DAVID ANTHONY M. HOSONO

6

7

8                                **NOTARY PUBLIC**

9    COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS: ss

10        On this 15th day of March, 2006, before me the undersigned Notary Public in and for the

11   Commonwealth of the Northern Mariana Islands, came **DAVID ANTHONY M. HOSONO,** to

12   me personally know to be the person who executed the above and foregoing Affidavit and who

13   acknowledged the execution of the same.

14        IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal, the

15   date and year first above written:

16

17   

18                                                          _____
                                                            Notary Public
                                                            My Commission Expires:

19                                                          POLLY ANNE T. DELA CRUZ
                                                            NOTARY PUBLIC
20                                                          Commonwealth of the Northern Mariana Islands
                                                            My Commission Expires on the
21                                                          4th day of December, 20O6.

22

23

24

                                         1




# COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
*Department of Public Safety*

### Issuance of Firearms/AMMO
### Acknowledgment Receipt

Emergency (24 hrs.) 911

DPS Main Switchboard
(670) 664-9000

Office of the Commissioner
664-9022

Police Division
664-9001

Fire Division
664-9003

Division of Correction
664-9058

Bureau of Motor Vehicles
664-9066

Training and Development
664-9094

Administrative Support
664-9000

Office of Special Programs
664-9120

Rota DPS
Tel: (670) 532-9433
Fax: (670) 532-9434

Tinian DPS
Tel: (670) 433-9222
Fax: (670) 433-9259

**My signature, as affixed hereunder, acknowledges receipt of Government (DPS) property (ies) as described below, and affirms that I shall be held responsible for the safekeeping and proper use (per existing laws, regulations and procedures as applicable) in the event of loss or damage of the said property (ies) while in my negligence, I shall be liable for payment in full based upon the replacement cost**

**Description of Firearm(s) & Quantity**
1. COLT AR 15 M16A1 SERVICE RIFLE # 700225 (1)
2. _____
3. _____
4. REMINGTON RIFLE #2247103 (1) BOLT ACTION

**Description & Quantity of Ammunition(s)**
1. 5.56 MM ROUNDS (100)
2. _____
3. 7.62 MM ROUNDS (20)
4. _____

### Justification

CHECKED OUT TO CIB COMMANDER FOR DRUG OPERATION

**Issued by:**
Print Rank/Name: RANGE MASTER OGUMORO
Date/ Time: 01-22-04 / 0945

*Signature of Issuer*

**Received by:**
Print Rank/Name: Ogumoro, Anieeta
Date/Time: Jan 22 2004

*Signature of Receiver*

**Approved by:**
Print Rank/Name: RANGE MASTER OGUMORO
Date/Time: 01-22-04 / 0945

*Signature of Approval*

Exhibit G




## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
*Department of Public Safety*

### Issuance of Firearms/AMMO
### Acknowledgment Receipt

Emergency (24 hrs.) 911

DPS Main Switchboard
(670) 664-9000

Office of the Commissioner
664-9022

Police Division
664-9001

Fire Division
664-9063

Division of Correction
664-9058

Bureau of Motor Vehicles
664-9066

Training and Development
664-9094

Administrative Support
664-9000

Office of Special Programs
664-9120

Rota DPS
Tel :(670) 532-9433
Fax: (670) 532-9434

Tinian DPS
Tel: (670) 433-9222
Fax: (670) 433-9259

My signature, as affixed hereunder, acknowledges receipt of Government (DPS) property (ies) as described below, and affirms that I shall be held responsible for the safekeeping and proper use (per existing laws, regulations and procedures as applicable) in the event of loss or damage of the said property (ies) while in my negligence, I shall be liable for payment in full based upon the replacement cost

**Description of Firearm(s) & Quantity**
1. 12 GAUGE MOSSBERG 590 # P 931709
2. # P 931527
3. _____
4. _____

**Description & Quantity of Ammunition(s)**
1. 12 GAUGE BUCKSHOT 140 ROUNDS / 28 BOXES
2. _____
3. _____
4. _____

### Justification

FOR BOATING SAFETY UNIT OPERATION

**Issued by:**
Print Rank/Name: RANGE MASTER OCUMORO
Date/ Time: 02-12-05 / 1400

_Signature of Issuer_

**Received by:**
Print Rank/Name: Ocumoro, Aniceto
Date/Time: Feb 12 2005

_Signature of Receiver_

**Approved by:**
Print Rank/Name: RANGE MASTER OCUMORO
Date/Time: 02-12-05 / 1400

_Signature of Approval_

Exhibit H

1   **Viola Alepuyo, CNMI Bar No. F0316**
    Camacho & Alepuyo
2   2ⁿᵈ Floor, Lim's Bldg, Oleai
    P.O. Box 5506 CHRB
3   Saipan, MP 96950
    Tel.: (670) 233-8535/6/7
4   Fax: (670) 233-8538

5   *Attorneys for Defendant*

6                    IN THE SUPERIOR COURT
                            OF THE
7        COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

8   COMMONWEALTH OF THE NORTHERN    )   CRIMINAL CASE NOS. 06-0038
9   MARIANA ISLANDS,                )
                                    )
10               Plaintiff,         )
                                    )
11       vs.                        )   **AFFIDAVIT OF CLAUDIO K. NORITA**
                                    )
12  **ANICETO T. OGUMORO,**         )
                                    )
13               Defendant.         )
                                    )
14                                  )

15      I, **CLAUDIO K. NORITA**, swear and declare as follows:

16  1.   I am over 18 years old and I am competent to testify to these facts;

17  2.   I was born on Saipan and have lived here all my life;

18  3.   I retired from the Department of Public Safety (DPS) after having been employed there for 19 years

19  4.   I graduated valedictorian from the Police Academy in June 1986;

20  5.   From 1986 to 1988, I was assigned to the Department of Public Safety's Division of Corrections,

21       Patrol, Traffic and Investigation;

22  6.   From 1988 to 1990, I was assigned to the Drug Enforcement Task Force;

23  7.   From 1988 until the date of retirement (2002), I was an adjunct instructor at the Northern Marianas

24       College;

                                    1

                    Exhibit I

a.      I taught at the Police, Fire, Corrections and the Law Enforcement Academies;

b.      I taught cadets in the areas of community relations (that eventually changed to community policing), criminal investigation, and officer survival, all of which are accredited by the Northern Marianas College;

c.      With respect to teaching the course in criminal investigation involving preliminary investigation, crime scene processing, interview and interrogation, evidence collecting and processing/preservation, specifics of various crimes, i.e. domestic violence, theft, assault and battery, fraud, sexual assault, homicide, robbery, firearms violation, drug investigation, undercover investigation, and all specific crimes law enforcement officers respond to;

d.      I also taught cadets the procedures involved in filling out specific forms involved with criminal investigation, i.e. field interview cards, evidence custody forms, etc.;

e.      I taught cadets the practical investigative methods involved in satisfying the probable cause necessary to obtain search warrants (involving affidavit of probable cause in support of search warrants, wiretaps, night warrants and anticipatory search warrants), arrest warrants, no-knock search warrants, etc.;

f.      Taught cadets specifically the information necessary for affidavits of probable cause in support of warrants, i.e. credibility of informants, interviews of other witnesses, field investigation, records check, verification of information to collaborate all information given in support of affidavits;

8.      From 1990 to 1992, I was the Special Agent in Charge for Special Operations Division, investigating narcotics, weapons and white collar crimes;

9.      In 1992 to 1994, I was Chief of Criminal Investigation Division;

10.      During these years, I oversaw all the investigative units under the Department of Public Safety, including Internal Affairs;

11.    From 1994 to 1995, I was Chief of Highway Safety;

12.    From 1995 to 1998, I was Chief of Office of Federal Programs, handling all of DPS' Federal grants;

13.    From January to September 1998, I was Acting Deputy Commissioner;

14.    From 1996 to 2000, I was a firearm instructor and certified impact ammunition instructor.

15.    From September 1998 to 2002, I was Chief of Special Services;

16.    I have in the past, during my investigative years, been qualified by the CNMI Superior Trial Court (now Superior Court) as an expert in drug identification;

17.    My opinion concerning the Affidavit of Probable Cause in *CNMI v. Ambrosio T. Ogumoro*, DPS Case No. 2006-001181, specifically, the portions referring to Mr. Aniceto T. Ogumoro, are as follows:

    a.    With respect to paragraph number 7, the year 2000 was when the "family member" (hereinafter informant) actually saw the firearms. To further corroborate the informant's information, the affiant should have done the following in order to determine whether probable cause still existed, more than six (6) years later:

        i.    The affiant should have asked the informant whether other family members were present and their identities;

        ii.    The affiant should have interviewed these other family members, if any, to corroborate the information received;

        iii.    Whether DPS had in their inventory and stock the firearms listed;

        iv.    Whether DPS issued any of these firearms to Ambrosio;

        v.    Whether Ambrosio had these firearms signed out;

        vi.    The informant should have been sent back to Ambrosio's residence to verify and physically see if these firearms were still in Ambrosio's possession;

        vii.    To engage Ambrosio in conversation as to the locations of these firearms;

        viii.    The affiant should have provided firearm samples in the form of pictures to determine

1            the type of firearm seen in 2000;

2     b.     With respect to paragraph numbers 9 and 10, the CNMI Customs Case Number CS98-02

3            allegedly occurred in 1998. The affiant should have done the following to corroborate the

4            information received:

5          i.     The affiant mentioned a "Customs Logbook" but did not provide any information

6                  concerning a file containing information about the bill of lading containing the container

7                  number, inventory of the container, shipper and recipient, etc.

8          ii.    The affiant should have verified with the Attorney General's Office as the status of the

9                  Customs Case, the recommendation of the prosecutor and the lack of prosecution

10                thereof ;

11         iii.   The container number found in the bill of lading would have verified if the container in

12                the 1998 incident was the same container found behind Mr. Ogumoro's residence or

13                any of the containers found in the Ogumoro compound;

14     c.     With respect to paragraphs 12 and 13, this is merely supporting information identifying Mr.

15            Ogumoro's residence and his employment, but more importantly, it does not link him with any

16            crime.

17     d.     With respect to paragraph number 13, the affiant should have verified with the DPS Armory if

18            Mr. Ogumoro had any department issued firearms and also to verify with records if he had any

19            registered firearms.

20     Dated this 15th day of March, 2006 on Saipan, Commonwealth of the Northern Mariana Islands.

21

22

23                                   CLAUDIO K. NORITA

24

4

1                             **NOTARY PUBLIC**

2  COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS: ss

3        On this 18th day of March, 2006, before me the undersigned Notary Public in and for the

4  Commonwealth of the Northern Mariana Islands, came **CLAUDIO K. NORITA,** to me personally

5  know to be the person who executed the above and foregoing Affidavit and who acknowledged the

6  execution of the same.

7        IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Official Seal, the

8  date and year first above written.

9

10                                SHEANNA P. SABLAN

                                    NOTARY PUBLIC

                  NOTARY      Commonwealth of the Northern Mariana

                  PUBLIC      Notary Public

11                  SAIPAN      My Commission Expires on the

12                                ____ day of ____, 20 0Y

13

14

15

16

17

18

19

20

21

22

23

24

CLERK OF COURT
SUPERIOR COURT
FILED

2006 APR 17 PM 3: 51

BY:
DEPUTY CLERK OF COURT

1  **FOR PUBLICATION**

2

3

4

5                    IN THE SUPERIOR COURT
                          OF THE
6          COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

7

8  COMMONWEALTH OF THE NORTHERN ) CRIMINAL ACTION NO.  06-0038 B
   MARIANA ISLANDS,                            )
9                                              )
              Plaintiff,                       )
10                                             )
        vs.                                    )
11                                             )  ORDER   GRANTING   DEFENDANT
   ANICETO T. OGUMORO,                         )  ANICETO  T.  OGUMORO'S  MOTION
12                                             )  TO SUPPRESS EVIDENCE
              Defendant.                       )
13 ─────────────────────────────────

14

15                          **INTRODUCTION**

16      On March 16, 2006, Aniceto T. Ogumoro (hereinafter "Defendant"), through counsel,

17  Viola Alepuyo and Joseph James Norita Camacho, moved this Court to order suppression of all

18  evidence seized by government agents while executing a search warrant at Defendant's

19  residence on February 10, 2006.  The motion was brought pursuant to the provisions of Rule

20  12(b)(3), N.M.I. Rules of Criminal Procedure, Article I, Section 3 of the N.M.I. Constitution,

21  the Fourth Amendment to the United States Constitution, and the holding in *Franks v.
   Delaware,* 438 U.S. 154 (1978).

22      Beginning on March 28, 2006, the Court heard arguments on the motion.  Viola

23  Apeluyo and Stephanie Flores appeared on behalf of Aniceto Ogumoro; Assistant Attorney

24  General Kristin St. Peter appeared on behalf of the Government.  The Government opposed the

25  motion.  Having heard all arguments and considered all submissions by counsel, the Court

26  hereby grants the Motion to Suppress Evidence.  Evidence obtained at Defendant's residence

27  under the guise of the invalid search warrant is inadmissible.

28

                          Exhibit J

                              -1-

1

**STANDARD**

2      The right of the people of the Commonwealth to be free from unreasonable search and

3  seizure is firmly grounded in the Commonwealth Constitution. *Commonwealth v. Aldan*, 1997

4  MP 31 ¶ 9.   No warrant shall be issued unless probable cause is supported by oath or

5  affirmation and "particularly describ[es] the place to be searched and the persons or things to be

6  seized."  N.M.I. Const., Art. I, § 3(a) (2004).   Probable cause exists when "there is a fair

7  probability that contraband or evidence of a crime will be found in a particular place." *Illinois*

8  *v. Gates,* 462 U.S. 213, 238 (1983).   A person aggrieved by an unlawful search (*i.e.* a search

9  warrant based on insufficient probable cause) may make a motion in court to suppress the

10  unlawfully obtained evidence.  6 CMC § 6204.  Upon such motion, the Court shall review any

11  facts necessary to the decision of the motion.  *Id.*  If the motion is granted, the evidence may not

12  be used as evidence at any hearing or trial. *Id.*

13

14

**DISCUSSION**

15      Defendant seeks to suppress evidence obtained during an investigation claiming the

16  search warrant was unlawful because it lacked probable cause.  The Commonwealth opposes

17  this motion, basing its contention on three facts that would have supported the magistrate

18  finding probable cause: (1) The search warrant yielded illegal weapons from the same

19  compound where Defendant lives; (2) Commonwealth Customs officers have records that

20  Defendant was the intended recipient of an illegal ammunition shipment in 1998; and (3) In

21  early 2000, Defendant was present when high-powered weapons were displayed.

22      In determining whether the search warrant was valid, the Court will not take into

23  consideration the weapons recovered under the guise of the search warrant.  To do so would

24  justify a search warrant based on the "fruit of a poisonous tree."  Therefore, the Court must

25  consider whether the facts, as presented within the four corners of the affidavit, support a

26  finding of probable cause as required by Article I, Section 3 of the Commonwealth Constitution

27  and the Fourth Amendment to the United States Constitution.

28

### I. *Franks* Hearing

Defendant relied on *Franks v. Delaware*, 438 U.S. 154 (1978) to challenge the facts in Detective Guerrero's affidavit. In *Franks*, the defendant sought to challenge the truthfulness of certain factual statements made in the police affidavit supporting a warrant to search his apartment, and sought to call witnesses to prove the misstatements. The trial court prohibited Franks from challenging the officer's sworn statement, and consequently, the evidence admitted at trial lead to a conviction.

The Supreme Court overruled, holding the defendant has a Fourth Amendment right to challenge the truthfulness of factual statements made in an affidavit to support a warrant under certain limited circumstances. "Where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment, as incorporated in the Fourteenth Amendment, requires that a hearing be held at the defendant's request." *Franks*, 438 U.S. at 155. Likewise, the Fourth Amendment is incorporated into Article I, Section 10 of the Commonwealth Constitution, providing an individual has a right to privacy, which "shall not be infringed except upon a showing of compelling interest." N.M.I. Const. Art. I, § 10; *see also Aldan*, 31 MP at ¶ 9. It is under the Commonwealth Constitution that this Court evaluates the existence of probable cause.

It is well established that a defendant challenging the veracity of statements that form the basis of a warrant bears a heavy burden. *United States v. Ursery*, 109 F.3d 1129, 1132 (6th Cir. 1997). To succeed in a *Franks* Hearing, the defendant must show: "(1) that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading, and (2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." *United States v. Box*, 193 F.3d 1032, 1034-35 (8th Cir. 1999) (quoting *United States v. Humphreys*, 982 F.2d 254, 259 n.2 (8th Cir. 1992)). In light of these factors, the warrant may be shown to be invalid by a preponderance of evidence. *United States v. Richardson*, 943 F.2d 547, 548 (5th Cir. 1991).

1    In this case, Defendant met the threshold requirement by casting sufficient doubt on the
2    value of the evidence presented within the four corners of the affidavit. Specifically, Defendant
3    highlighted the following: (1) of the five paragraphs in the affidavit that mention Defendant,
4    paragraphs 10, 12, and 13 are legal and non-incriminating; (2) material facts were omitted from
5    the affidavit concerning the 1998 Customs Case (CS98-02) due to an unreasonable investigation;
6    and (3) the display of guns in early 2000 has not been corroborated by other family members
7    present, nor has the reporting family member's credibility been established. In addition, the
8    passage of time renders the latter two incidents stale and insufficient to support a finding of
9    probable cause.

10    In the absence of significant facts and corroboration derived from a diligent investigation,
11    whether intentionally or unintentionally omitted, the finding of probable cause within the four
12    corners of the affidavit is too attenuated and the search warrant is therefore invalid.

13

14    **II. False Search Warrant Due to Lack of Probable Cause**

15    A false search warrant is one that misleads the magistrate into believing the existence of
16    certain facts which enter into his thought process when evaluating probable cause." *State v.*
17    *Groff,* 323 N.W. 2d 204, 210 (1982). Although information forming the basis of a search
18    warrant is not required to be entirely accurate (*Thomas v. State,* 173 Ga.App. 481, 484 (1985)
19    (citing *United States v. Leon,* 468 U.S. 897 (1984) (held probable cause or substantial basis to
20    believe facts in affidavit justifies reliance on truthfulness in regard to an informant.)), the
21    validity of the warrant must be assessed on the basis of the information officers disclosed, or
22    had a duty to discover and to disclose, to the issuing magistrate. *Maryland v. Garrison,* 480
23    U.S. 79, 85 (1987).

24    This Court extends this standard to the exclusion of significant information bearing on
25    probable cause, particularly exculpatory facts and adverse information. *State v. Beaty,* 118
26    Idaho 20 (1990) (deliberate withholding of exculpatory information from the magistrate
27    constituted reckless disregard for truth and a substantial probability existed that had omitted
      information been given to the magistrate, it would have altered the magistrate's finding of
28    probable cause); *see also People v. Windrum,* 128 Misc.2d 1043 (1985) (motion to suppress

1  evidence granted because officer failed to disclose that informant gave contradictory
2  statements).
3         As is evidenced by facts brought to light at the hearing, and in consideration of the facts
4  as they are presented within the four corners of the affidavit, affiant failed to exercise due
5  diligence in his investigation and carelessly omitted material facts that would have altered the
6  magistrate's finding of probable cause. Specifically, affiant's careless investigation resulted in
7  the omission of materials facts in paragraphs 9 and 7 of the affidavit, reliance on stale evidence,
8  and failure to establish the family member's credibility or reliability. Had the issuing
9  magistrate disregarded the stale evidence and questioned the reliability of the informant,
   nothing in the affidavit would support a finding of probable cause.
10
11     **A. Paragraphs 10, 12, and 13 Do Not Support Probable Cause**
12         Three of the five paragraphs in the affidavit contain facts that are neither incriminating
13  nor illegal. In summary, they state Defendant is a police captain, who resides on the Ogumoro
14  family compound, and has a container behind his residence. Even when considering the totality
15  of the circumstances, none of these three paragraphs substantiates probable cause that criminal
    activity is afoot.
16         The container behind Defendant's residence is neither illegal nor incriminating evidence
17  supporting probable cause. According to the affidavit, "[A]n assessment was conducted of the
18  Ogumoro family compound where by a container was seen to be located behind the residence of
19  Mr. Aniceto T. Ogumoro in Capitol Hill amongst other discoveries." (Guerrero Aff. ¶ 10).
20  However, the family compound reportedly has three such containers dispersed around the
21  compound. No facts are provided to support a reasonable suspicion that the container found
22  behind Defendant's residence is the same container seized eight years ago in 1998 (discussed
23  below). A corresponding container number or physical description, both of which were
24  accessible to the detective, would have substantiated a reasonable suspicion. Yet, such details
25  were either intentionally omitted to create an inference or carelessly omitted during the
26  investigation process. Regardless, this fact alone is not illegal or suspicious and the Court
    refuses to consider it when determining probable cause.
27         Nor is there anything illegal about the facts mentioned in paragraphs 12. "[B]oth
28  Ambrosio Ogumoro and his brother Aniceto T. Ogumoro reside at the Ogumoro family property

compound in Capitol Hill." (Guerrero Aff. ¶ 12). Living amongst family members is not illegal, nor does it implicate criminal activity. On the contrary, it is part of the culture of living on family owned lands.

Lastly, Defendant's position within the DPS does not support probable cause. In fact, it should have highlighted the absence of implicating evidence. Paragraph 13 reads: "That Mr. Aniceto T. Ogumoro is currently employed by the Department of Public Safety as a Police Captain and is serving as the Acting Director of Police." (Guerrero Aff. ¶ 13). Defendant's position as Police Captain and Acting Director of Police inexplicitly requires more substantiated facts to support probable cause. However, no such facts are provided by the affiant, and thus, this fact does not substantiate a finding of probable cause.

## B. Paragraph 9 - The 1998 Customs Case CS02-98

In light of the circumstances, the seizure of the 1998 shipment is too uncertain and stale to support a finding of probable cause. Although Customs Case CS98-02 case is eight years old, the lapse of time is least important when the suspected criminal activity is continuing in nature and when the property is not likely to be destroyed or dissipated. *United States v. Horn,* 187 F.3d 781, 786 (8th Cir. 1999). "[I]nformation four months old, or even three years old, may supply probable cause for a warrant to search the home of someone suspected of illegal possession of a firearm, because possession is a continuing offense and because firearm enthusiasts tend to keep their weapons for long periods of time." *Id.* at 786. (citing *United States v. Maxim,* 55 F.3d 394, 397 (8th Cir. 1995), cert. denied, 516 U.S. 903, 116 S.Ct. 265, 133 L.Ed.2d 188 (1995) (lapse of time was minimized because defendant was a convicted felon, a special agent swore under oath that gun enthusiasts keep weapons for long periods of time, and conformation that defendant was in possession of illegal firearms four months prior to execution of warrant.)

However, unlike the defendant in *Maxim,* Defendant is not a convicted felon, nor is there any indication that he recently engaged in illegal activity. Quite the contrary, he was Captain of

1    the Police when the warrant was executed and aside from the facts presented in the affidavit,

2    there is no indication he has violated the law during his tenure.

3        There is no bright-line test for determining when information is stale. Staleness cannot

4    be determined solely by counting days on a calendar. *United States v. Spikes,* 158 F.3d 913, 923

5    (6th Cir. 1998). Rather, time factors must be examined in the context of a specific case and the

6    nature of the crime under investigation. *United States v. McNeil,* 184 F.3d 770, 775 (8th Cir.

7    1999); *see also United States v. Harris,* 369 F.3d 1157, 1165 (10th Cir. 2004). Other courts have

8    classified information as too stale to establish probable cause based on the nature of the criminal

9    activity, the length of the activity, and the nature of the property to be seized. *Harris,* 369 F.3d

10   at 1165; *Spikes,* 158 F.3d at 923; *United States v. Williams,* 124 F.3d 411, 420 (3d Cir. 1997);

11   *United States v. Schaefer,* 87 F.3d 562, 568 (1st Cir. 1996); *United States v. LaMorie,* 100 F.3d

12   547, 554 (8th Cir. 1996).

13       In this case, too much significant information is omitted from the affidavit to ignore the

14   lapse of time. There is no indication whether charges where filed in the past eight years in

15   connection with the seized shipment. Surely, the Attorney General's Office would have

16   investigated and pressed charges within the past eight years if the contents seized in 1998 were

17   illegal. There are simply no facts to support the assumption the shipment was illegal or intended

18   for illegal purposes.

19       Had the affidavit addressed whether an investigation was conducted or concluded,

20   whether the shipment was determined to be illegal, whether charges were filed or dropped, or

21   whether the shipment was intended for personal or DPS use, there likely would have been

22   sufficient facts supporting probable cause. With little more, too much is left to the imagination

23   of the magistrate and too little is provided to support a finding of probable cause.

24

25   **C. Paragraph 7 – The Display of Guns in Early 2000**

26       The same line of reasoning can be applied to the family member's observation of

27   Defendant's presence in early 2000 when officer Ambrosio Ogumoro displayed numerous guns

28

on a table. The affidavit states, "Ambrosio's brother Aniceto T. Ogumoro [Defendant] was present at the time when [the] firearms were displayed." (Guerrero Aff. ¶ 7).

According to the family member, on the table were displayed "(about 6) Uzis, (about 3) 12 gauge) shotguns, (several) M-16 machineguns" and "a lot of handguns." (Guerrero Aff. ¶ 7). However, the affidavit does not state that Defendant was in contact with the guns or responsible for the guns. The affidavit also does not mention if other family members were present, if the information was corroborated by another source, or if the family member is a credible and reliable informant.

In *Illinois v. Gates,* the Supreme Court abandoned its earlier two prong Aguilar-Spinelli test for assessing an informant's reliability and reaffirmed the totality of the circumstances analysis that was traditionally used to determine probable cause. *Gates,* 462 U.S. at 238-39. In examining the totality of the circumstances, courts have considered the following factors: (1) first-hand observation by the informant; (2) degree of detail provided; (3) corroboration of the informant's information by an officer's independent investigation; and (4) the fact that the informant testified at the probable cause hearing." *Unites States v. Reddrick,* 90 F.3d 1276, 1280 (7th Cir. 1996). Thus, hearsay may be the basis of the affidavit if the magistrate is provided with some of the underlying circumstances indicating the statements are reliable. *Corey v. Commonwealth,* 8 Va. App 281, 288 (1989); *see also United States v. DeQuasie,* 373 F.3d 509 (4th Cir. 2004).

It is necessary to consider all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information. *Id.* The magistrate must be informed of some underlying circumstances from which the informant can be deemed reliable. It cannot be presumed the magistrate was informed of significant facts prior to signing the affidavit in the absence of such an assertion. Therefore, this Court is limited to the facts as they are presented within the four corners of the affidavit.

In this case, the informant was not established as a reliable or credible witness. Although the family member had a first-hand observation of the guns displayed in early 2000, the evidence was not corroborated with any other family member or witness. In addition, neither the affiant

-8-

1   nor the affidavit personified the family member.  For example, to determine credibility or

2   veracity, the magistrate may wish to consider the age, mental capacity, or the family member's

3   involvement in the gun display.  Yet, the affidavit is simply void of credible characteristics,

4   corroborating evidence, or indications that the family member is reliable.

5          In light of these circumstances, the early 2000 display of guns is too stale to support a

6   finding of probable cause.  Defendant's position within the DPS cannot be overlooked in

7   consideration of the lapse of time and lack of significant information supporting probable cause.

8   Rather, in the absence of incriminating facts, it is reasonable to assume that Defendant was

9   lawfully in the presence of DPS weapons.

10         More importantly, the affidavit fails to establish a significant nexus between Ambrosio

11  Ogumoro's questionable conduct and that of the Defendant.  Even if Defendant was present

12  when the guns were displayed in early 2000, simply being present does not create reasonable

13  suspicion.  As such, when considering the totality of the circumstances, a personal observation is

14  insufficient without credibility or corroboration to support the finding of probable cause.

15

16  **D. Affiant Failed to Conduct a Diligent Investigation**

17         The basis of finding probable cause must appear on the face of the affidavit.  *Giordenello*

18  *v. United States,* 357 US 480, 487 (1958).  The probable cause standard does not "require

19  officials to possess an airtight case before taking action.  Rather, the pieces of the puzzle of an

20  investigation puzzle will often fail to neatly fit, and officers must be given leeway to draw

21  *reasonable* [emphasis added] conclusions from confusing and contradictory information...."

22  *DeQuasie,* 373 F.3d at 518-19 (quoting *Taylor v. Farmer,* 13 F.3d 117, 121 (4th Cir. 1993)).  So,

23  while an affidavit supporting a search warrant should not be read in a grudging or technical

24  manner, it should not require the magistrate or a reviewing court to use imagination to supply

25  essential details critical to determining probable cause.  *United States v. Karathanos,* 531 F.2d

26  26, 31 (C.A.2. N.Y. 1976).

27         A law enforcement officer must act on what he knows, or should know, in the exercise

28  of due diligence.  *United States v. Leon,* 468 U.S. 897, 914 (1984).  To not hold an officer to

1    this standard and permit the omission of material facts would defeat the entire purpose of the

2    warrant procedure. *United States v. Broward*, 594 F2d 345, 351 (1979) (to condone the

3    insertion of a material fact that would negate probable cause would defeat the whole point of

4    the procedure and allow the judicial officer to make an independent assessment of the existence

5    of probable cause.)

6        The facts presented in the affidavit fail to establish a sufficient nexus between Ambrosio

7    Ogumoro's alleged illegal conduct and that of Defendant. During the hearing, Defendant

8    successfully highlighted affiant's failure to exercise due diligence during his investigation. This

9    lack of diligence is reflected in a superficial investigation and scant evidence concerning the

10    Defendant's involvement in the possession of illegal firearms.

11        First, the affiant failed to comprehensively access DPS firearms logbooks and ensure

12    Defendant was not lawfully in possession of firearms. According to the affiant's testimony, he

13    feared he would be denied access to department logbooks, and thus did not attempt to do so.

14    This is simply not an adequate answer. Had the affiant accessed the logbooks, he would have

15    known what firearms were issued to Defendant, and whether it was reasonable to believe

16    Defendant was unlawfully in possession of firearms. Failing to take such basic investigative

17    steps casts serious doubt on the reasonableness of affiant's belief that Defendant was involved

18    in unlawful conduct. It indicates a careless investigation process.

19        Second, affiant did not adequately investigate Customs Case CS98-02. When asked if

20    he believed the ammunition seized in 1998 would be found at Defendant's residence, the affiant

21    answered yes. The Court finds this belief to be unreasonable given the inadequate investigation

22    conducted by the affiant. He did not question Customs about the contents of the container,

23    whether Customs had disposed of the seized contents, where the container was currently

24    located, or whether it had a distinguishing color, number, or shipping company inscription. Nor

25    did he contact the Attorney General's Office to inquire about an investigation of CS980-2 or to

26    establish whether charges were filed. Affiant further testified that conducting such an

27    investigation would have been relatively easy. However, having failed to do so, significant

28

facts were omitted that would have supported or negated the magistrate's finding of probable cause.

Affiant also failed to correlate evidence and substantiate a reasonable belief that the ammunition was located at Defendant's residence. Affiant testified that Custom's records listed the seized cargo container's number, yet he did not make record of the container's number. In fact, the affiant does not mention the container's physical attributes or serial numbers to support an inference that Defendant was in possession of the ammunition. As such, the affidavit is void of correlating evidence.

Lastly, it was brought to the Court's attention during the hearing that the affiant did not visit the compound before submitting the affidavit or executing the warrant. However, affiant asserts a reasonable belief that there is a "high probability" the ammunition and firearms are stored at Defendant's residence where co-Defendant (Ambrosio Ogumoro) "frequently visits." (Guerrero Aff. at 4). Although the brothers live on the same compound, this fact alone is simply insufficient to support such a suspicion.

The Court finds that the lack of information in the affidavit is not due entirely to intentional omissions, but rather the result of a poorly conducted investigation that haphazardly portrays facts too weak to support a finding of probable cause. It is suggested that DPS re-evaluate the tools and skills detectives utilize in conducting an investigation and preparing affidavits. In addition to improving investigation techniques and procedures, the Attorney General's Office should be consulted to guide detectives in substantiating probable cause before submitting an affidavit to a magistrate. By consulting the Attorney General's Office, DPS is ensuring all the dots are sufficiently connected.

### III.  Conclusion

This Court interprets Article I, Section 3 of the N.M.I. Constitution as setting a higher standard than the Fourth Amendment. As such, the evidence supporting probable cause within the four corners of the affidavit, and presented at the hearing, was examined under the Commonwealth Constitution. Properly preparing and executing a search warrant from its

1  conception protects the people of the Commonwealth from unlawful searches and seizures, and
2  upholds their right to privacy.

3         An individual's rights are protected when the government takes prudent steps in
4  obtaining a search warrant.   In turn, the search warrant is less likely to be deemed invalid.
5  Ensuring the validity of a warrant before execution will aid DPS in efficiency and support its
6  quest to stop crime.  Further, taking such prudent steps from an investigation's conception will
7  assist the Attorney General's Office in successfully prosecuting crime.   Most importantly,
8  improving investigation techniques, procedures, and affidavit preparation is the best method of
9  protecting individual rights against unreasonable searches and seizures, and their right to
10  privacy.

11

12                              **CONCLUSION**

13         For the foregoing reasons, Defendant's Motion to Suppress Evidence is hereby
14  GRANTED.

15

16     **IT SO ORDERED** this ___7th___ day of April 2006.

17

18

19                                       _____
20                                       KENNETH L. GOVENDO,
                                         Associate Judge
21

22

23

24

25

26

27

28

-12-

FILED
C N M I
SUPREME COURT
DATE: 12·18·2006   9:20am
BY: _____
CLERK OF COURT

# IN THE SUPREME COURT
## OF THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

### COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
*Plaintiff-Appellant,*

v.

### ANICETO T. OGUMORO,
*Defendant-Appellee.*

## SUPREME COURT APPEAL NO.  CR-06-0020-GA
### Civil Action No. 06-0038B

## ORDER OF DISMISSAL

¶1      On motion of the Appellant to voluntarily dismiss its appeal, the Court hereby

finds said motion to be proper and should be granted.

¶2      IT IS THEREFORE ORDERED by the Court that this appeal is DISMISSED.

**SO ORDERED** this  18  day of December 2006.

MIGUEL S. DEMAPAN
Chief Justice

ROBERT C. NARAJA
Justice *Pro Tempore*

DAVID A. WISEMAN
Justice *Pro Tempore*

Exhibit K

1
JEFFERY L. WARFIELD, SR. ASSISTANT ATTORNEY GENERAL
2  OFFICE OF ATTORNEY GENERAL
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
3  CIVIC CENTER COMPLEX
SUSUPE, SAIPAN, MP 96950
Tel: (670) 664-2366/2367
4  Fax: (670) 234-7016
Attorneys for PLAINTIFF
5

6                        IN THE SUPERIOR COURT OF THE
                COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
7

COMMONWEALTH OF THE          )        CRIMINAL CASE NO.  06-0038B
8  NORTHERN MARIANA ISLANDS,   )            DPS NO. 06-01405
        Plaintiff,               )
9                                )        MOTION TO DISMISS
        v.                       )        WITH PREJUDICE
10                               )
ANICETO OGUMORO,             )
11  d.o.b. 09/22/61              )
        Defendant.               )
12                            )          Judge:  Hon. Kenneth Govendo

13        The Commonwealth of the Northern Mariana Islands ("the Commonwealth"), by and through

14  Jeffery L. Warfield, Sr., Assistant Attorney General, hereby files this Motion to Dismiss the above

15  referenced case with prejudice, for the reasons set forth more fully below.

16        After further review of the file and based upon this Court's granting of Defendant's Motion to

17  Suppress, the Commonwealth is not convinced that sufficient evidence exists to prove the charges set forth

18  in the above-mentioned case beyond a reasonable doubt.  Therefore, the Commonwealth respectfully

19  requests this Court to dismiss this case with prejudice, pursuant to Com. R. Crim. P. 48(a).

20

21        DATED this 1st day of December 2006.

22                                RESPECTFULLY SUBMITTED
                                  OFFICE OF THE ATTORNEY GENERAL
23

24

25                                JEFFERY L. WARFIELD, SR.
                                  Assistant Attorney General, Bar No. T0030

Camacho & Alepuyo
Attorneys-At-Law
Received By: J. Alepuyo
Date: 12/4/06
Time: 1:35pm                        -1-

Exhibit L

CLERK OF COURT
SUPERIOR COURT

2006 DEC -5 AM 9: 09

OF COURT

# IN THE SUPERIOR COURT OF THE
# COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| COMMONWEALTH OF THE<br>NORTHERN MARIANA ISLANDS,<br>    Plaintiff,<br><br>    v.<br><br>ANICETO OGUMORO,<br>d.o.b. 09/22/61<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CRIMINAL CASE NO.  06-0038B<br>DPS NO. 06-01405<br><br>ORDER TO DISMISS<br>WITH PREJUDICE<br><br><br>Judge:  Hon. Kenneth Govendo |

The Commonwealth of the Northern Mariana Islands, having filed a motion to dismiss the above referenced case, good cause appearing, it is hereby **ORDERED** that this case be **DISMISSED** with prejudice.

DATED  this  5  day of December 2006.

KENNETH GOVENDO
Superior Court Judge

-2-

Exhibit M